**Frederick FRANCIS,
Plaintiff–Appellant,**

v.

**Robert FOX, Elaine Lewis, Marian
Shinbaum, John M. Shaver and
Paul Whaley, Defendants–Appellees.**

No. 86–7845
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 29, 1988.

Frederick Francis, pro se.

Don Siegelman, Atty. Gen., Thomas R. Allison, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before KRAVITCH, HATCHETT and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Frederick Francis, currently on parole from the Alabama penal system, was convicted of robbery and sentenced to prison for twenty-five years. Prison officials twice recommended Francis for participation in Alabama's work-release program. *See* Ala.Code § 14–8–2 (1982).[1] Francis was denied work-release both times by the Central Review Board of the Department of Corrections' Classification and Records Division because his crime involved serious physical injury to his victim and the Board expected negative community reaction to a grant of work-release to Francis.[2] The Director of Corrections denied Francis' appeals.

■ Francis filed this action against various prison officials under 42 U.S.C. § 1983, alleging that the Corrections Department's decision to deny him work-release violated the due process clause of the fourteenth amendment.[3] Francis also alleged that the application to him of the Department's Regulation 410, establishing the criteria for eligibility to participate in the work-release program,[4] violated the ex

---

1. Ala.Code § 14–8–2, "Authority to adopt regulations and policies to implement program," provides:

    (a) The board is authorized to adopt regulations and policies permitting the commissioner to extend the limits of the place of confinement of an inmate, as to whom there is reasonable cause to believe he will know his trust, by authorizing him, under prescribed conditions, to leave the confines of that place unaccompanied by a custodial agent for a prescribed period of time to work at paid employment while continuing as an inmate of the institution or facility in which he shall be confined except during the hours of his employment or seeking of employment and traveling thereto and therefrom. Inmates shall participate in paid employment at the discretion of the board.

    (b) The board may adopt regulations as to the eligibility of those inmates who are classified as minimum security risks for the extension

of confinement or the entering into agreement between the board and any city, county or federal agency for the housing of these inmates in a local place of confinement. The board shall, as the need becomes evident, designate and adapt facilities in the state prison system to accomplish the purpose of this article.

2. The District Attorney of the county in which Francis was convicted wrote to the Board protesting any grant of work-release to Francis.

3. "[N]or shall any state deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

4. Paragraph E of Regulation 410 establishes "Selection Criteria" for community custody placement. These criteria include an earliest release date within thirty months, no violent sex offenses, no major disciplinary action within the

post facto clause of the Constitution.[5] The district court granted summary judgment for all appellees, holding that Francis had no liberty interest protected by the due process clause in obtaining work-release.[6] We affirm.

■ Liberty interests protected by the due process clause of the fourteenth amendment may arise either from the Constitution itself or from state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). Francis does not contend that the Constitution gives him a right to work-release.[7] Rather, he argues that the state of Alabama has created a liberty interest in work-release. The existence of a liberty interest in work-release arising from state law depends on the extent to which official discretion has been constrained by statute, regulation, or practice. *Accord Board of Pardons v. Allen,* — U.S. ——, 107 S.Ct. 2415, 2419, 96 L.Ed.2d 303 (1987); *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979); *Whitehorn v. Harrelson,* 758 F.2d 1416, 1423 (11th Cir. 1985). In particular, "[w]hen the statute is

framed in discretionary terms there is not a liberty interest created." *Thomas v. Sellers,* 691 F.2d 487, 489 (11th Cir.1982) (per curiam).

■ The Alabama statute governing work-release is framed in discretionary terms. Ala.Code § 14–8–2(a) authorizes the Board of Corrections to promulgate regulations "permitting the commissioner to extend the limits of the place of confinement of an inmate, as to whom there is reasonable cause to believe he will know his trust.... Inmates shall participate in paid employment at the discretion of the board." Regulation 410, promulgated by the Board of Corrections to govern work-release, does not restrict the discretion of those who decide whether work-release is appropriate. Although Paragraph E of Regulation 410 sets forth various "Selection Criteria" to specify who may receive work-release, affidavits for the appellees indicate that this paragraph states not who *must* receive work-release, but simply who is *eligible* for work-release; the Corrections Department still must exercise discretion in choosing suitable prisoners.[8] Fran-

---

previous six months, no dependency on alcohol or drugs, and good physical condition. In addition, Regulation 410 requires that the prisoner have been given one of three minimum-custody classifications for at least sixty days, and that the offender and crime be "such as not to provoke negative community reaction."

5. "No State shall ... pass ... any ex post facto Law...." U.S. Const. art. I, § 10.

6. Francis originally sought declaratory and injunctive relief but later appended a claim for compensatory and punitive damages. Even though Francis has been paroled, his claim for damages ensures that this controversy is not moot. *See Board of Pardons v. Allen,* — U.S. ——, 107 S.Ct. 2415, 2417 n. 1, 96 L.Ed.2d 303 (1987); *Winsett v. McGinnes,* 617 F.2d 996, 1004 (3d Cir.1980) (en banc), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981). Francis also alleged a violation of the equal protection clause below, but he has abandoned that claim on appeal.

7. *Cf. Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) (no constitutional right to conditional release before expiration of valid sentence).

8. We recognize that in *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (en banc), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), the Third Circuit concluded that Delaware statutes and regulations similar to the Alabama provisions under consideration here did create a liberty interest in the expectation of work-release that was protected by the due process clause. The *Winsett* court held that "a state-created liberty interest in work release arises when a prisoner meets all eligibility requirements under the state regulations and the exercise of the prison authorities' discretion is consistent with work release policy." 617 F.2d at 1007. We respectfully disagree with this conclusion. In our view, the holding in *Winsett* gives insufficient consideration to the highly subjective nature of the prison authorities' decision to grant or deny work-release. What the Supreme Court said of parole in *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. at 8, 99 S.Ct. at 2104, is true of work-release as well:

[T]he state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. Indeed, the very institution of parole is still in an experimental stage. In

cis presented nothing to the district court to show either that the appellees' interpretation of Regulation 410 was incorrect or that the application of Regulation 410 in actual practice demonstrated restrictions on the officials' discretion. *Cf. Whitehorn v. Harrelson,* 758 F.2d at 1422 (existence of liberty interest can be factual issue inappropriate for resolution on summary judgment). We hold that the district court correctly granted summary judgment for appellees on the due process claim.

■ Appellees are entitled to summary judgment on the ex post facto clause claim as well.[9] Francis argues that the Corrections Department may not use Regulation 410 to determine his eligibility for work-release because, at the time of his crime, work-release was governed by the more lenient Regulation 300. In particular, Regulation 300 did not require consideration of negative community reaction to the work-release decision, as does Regulation 410. Appellees do not dispute that negative community reaction was one of the reasons for the denial of Francis' work-release application.

This case is similar to *Dufresne v. Baer,* 744 F.2d 1543 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985), and *Paschal v. Wainwright,* 738 F.2d 1173 (11th Cir.1984), in which we rejected the argument that parole guidelines retrospectively applied to the appellant prisoners were invalid as ex post facto

laws. As we explained, "[a]n ex post facto law possesses three characteristics: it is a criminal or penal measure, retrospective, and disadvantageous to the offender because it may impose greater punishment." *Dufresne,* 744 F.2d at 1546; *see Paschal,* 738 F.2d at 1176. We concluded, however, that parole guidelines are not "laws" at all within the meaning of the ex post facto clause. Rather, "[t]hey are stated policy rules that show how agency discretion is likely to be exercised. They do not state rules of conduct for the public. A change in the guidelines does not affect the maximum or minimum prison sentence a court may impose, the point at which the prisoner becomes eligible for parole, or his mandatory release date." *Dufresne,* 744 F.2d at 1550. The same is true of Regulation 410 governing Alabama's work-release program. We therefore hold that Regulation 410 is not an ex post facto law.

Accordingly, the judgment of the district court is AFFIRMED.

---

parole releases, like its siblings probation release and institution rehabilitation, few certainties exist. In each case, the decisions differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's offense will minimize the gravity

of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice. The entire inquiry is, in a sense, an "equity" type judgment that cannot always be articulated in traditional findings.

9. The district court did not rule on the ex post facto clause claim but granted summary judgment for the appellees based on its rejection of Francis' due process argument.