**William Scott CONLOGUE,
Plaintiff–Appellant,**

v.

**Dr. Marion SHINBAUM, Director of
Classification, Alabama Department
of Corrections, Defendant–Appellee.**

No. 90–7760
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 26, 1991.

William S. Conlogue, pro se.

Harry A. Lyles, Andrew W. Redd, State of Alabama Dept. of Corrections, Montgomery, Ala., for defendant-appellee.

Before EDMONDSON and COX, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

William Scott Conlogue pled guilty to a 1977 offense of second degree murder, and has been serving a 28 year sentence in an Alabama state prison since 1988. He is

apparently a model prisoner, and prison officials have recommended that he be placed on Incentive Good Time (IGT) status. The Department of Corrections, however, denied Conlogue IGT status at this time because of his record of multiple violent offenses.

Conlogue brings this section 1983 claim pro se charging that the Alabama Department of Corrections violated the due process and equal protection clauses of the fourteenth amendment, and the ex post facto law clause of article 1, section 10, clause 1 of the U.S. Constitution. He also charges that Administrative Regulation 420 violates the Alabama state legislature's intent.

Administrative Regulation 420 sets out the basis for determining a prisoner's eligibility for IGT. Section II(h) of this regulation in effect in 1977, when Conlogue committed his crime, stated:

*Psychological and/or Sociological.* Any inmate whose psychological or sociological profile contraindicates an early release back to society will not receive IGT. A history of repeated disciplinaries will constitute evidence of an inability to adjust and, therefore, a contraindication to IGT status.

In 1986, the Department of Corrections added the following to this section:

Since criminal record is an important element of sociological profile, repeated convictions for violent crimes against persons may be a contraindication to award of IGT status.

The district court adopted the magistrate's recommendation to dismiss the case as frivolous pursuant to 28 U.S.C.

§ 1915(d), as it found that plaintiff's legal theories were meritless.[1] This court granted Conlogue's motion to appeal *in forma pauperis*, and we affirm the district court on the issues it addressed.

■ The Alabama regulation in effect in 1977 awards IGT on a discretionary basis. The terms "psychological or sociological profile" are broad and not defined. Disciplinary history and criminal record are only "evidence" or an "element" of such a profile. This leaves the Department discretion to consider other factors. There is no suggestion that "repeated disciplinaries" were the *only* criteria contraindicating early release in 1977.

The 1986 addition makes no mandatory constraints on the regulation's original discretion. An inmate's criminal record *"may"* be considered in determining IGT status. The addition thus serves only to further define the meaning of "sociological profile", not create new law.

■ "When [a] statute is framed in discretionary terms there is not a liberty interest created."[2] Regulation 420 II(h) gives the Department of Corrections discretion in awarding IGT to prisoners. We thus hold that Regulation 420 II(h) does not create a liberty interest protected by the due process clause.[3]

■ Denying IGT to prisoners based on their criminal record is rationally related to the state's interest in preventing the early release of serious offenders.[4] We thus hold that Regulation 420 II(h) does not violate the equal protection clause.

■ The magistrate and district court could not address Conlogue's claim that the state Administrative regulation violates the intent of the state legislature, because this conduct does not deprive him of any rights

1. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

2. *Thomas v. Sellers,* 691 F.2d 487, 489 (11th Cir.1982) (per curiam); *Francis v. Fox,* 838 F.2d 1147, 1149 (11th Cir.1988) (Alabama's Department of Corrections' Regulation 410 establishing criteria for eligibility in a work release program does not create a liberty interest); *Keenan v. Bennett,* 613 F.2d 127, 130 (5th Cir.1980).

3. In *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1980), however, the Supreme Court held that "a law need not impair a vested right to violate the *ex post facto* prohibition."

4. *Thornton v. Hunt,* 852 F.2d 526, 527 (11th Cir.1988).

secured by the laws or constitution of the United States.[5] We too are bound by the same limitations on our jurisdiction.

Conlogue also claims that when the Department of Corrections denied him IGT because of his record of multiple violent offenses, it applied the 1986 section of Regulation 420 II(h) to his case retrospectively. Since he could have otherwise earned IGT for good behavior in prison, this denial made his sentence more onerous in violation of the ex post facto clause. The lower court did not address this claim and we now do.

■■■ A law violates the ex post facto clause [6] if it is penal or criminal, and "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." [7] However, there is no ex post facto violation if the change in law is only procedural, and there is neither change in the substance of the offence nor in its punishment.[8]

■■ Because of the discretionary nature of Regulation 420 II(h), we find that the principles we earlier set forth in *Paschal v. Wainwright, Dufresne v. Baer* and *Francis v. Fox* govern this case.[9]

In *Francis v. Fox,*[10] we held that an Alabama Department of Corrections administrative regulation elucidating eligibility for a work release program was not a law for purposes of the ex post facto clause, and did not increase a prisoner's sentence. Although prison officials recommended the petitioner for the work release program, the review board denied him eligibility because the crime he was incarcerated for involved serious injury to the victim.

This court held that the regulation was not law because it did not state rules of conduct, nor did it affect primary behavior. It also did not increase the prisoner's sentence because it did not change the minimum or maximum prison sentence imposed, and the Corrections Department retained full discretion in considering a prisoner's eligibility for work release. Thus, the regulation did not violate the ex post facto clause.[11]

The statute challenged in *Paschal v. Wainwright* [12] required the Florida parole commission to adopt guidelines creating presumptive parole release dates. Previous to the adoption of the guidelines, parole decisions were made on a purely discretionary basis. The new guidelines delineated "objective criteria" in deciding whether to parole an inmate.[13] We found that the Commissioner retained complete discretion over the parole decision, only the form of that discretion changed. The guidelines did not increase the petitioner's punishment, and thus did not violate the ex post facto clause.[14]

---

**5.** To succeed, a section 1983 plaintiff must show that the laws or constitution of the *United States* were violated by state action. *Fullman v. Graddick,* 739 F.2d 553, 561 (11th Cir.1984).

**6.** Article 1, section 10, clause 1 of the U.S. Constitution states that "No state shall ... pass any ... ex post facto law."

**7.** *Cummings v. Missouri,* 4 Wall. 277, 325–26, 18 L.Ed. 356 (1867).

**8.** *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

**9.** We distinguish this case from *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1980). A *nondiscretionary* statutory amount of gain time was available to Florida prisoners solely for good conduct and avoiding disciplinary infractions. A new regulation drastically reduced the gain time an inmate could earn.

Since the new regulation reduced the amount of gain time a prisoner could obtain for the exact same behavior, it constricted the prisoner's opportunity to earn an early release, making his sentence more onerous in violation of the ex post facto clause.

**10.** 838 F.2d 1147 (11th Cir.1988).

**11.** 838 F.2d at 1150.

**12.** 738 F.2d 1173 (11th Cir.1984). The plaintiff in this case challenged presumptive parole release dates as increasing his punishment, as he would realistically be considered for parole only on that date.

**13.** 738 F.2d at 1177–78.

**14.** 738 F.2d at 1180–81.

Similarly in *Dufresne v. Baer*,[15] we held that Florida parole guidelines which rearticulated the Parole Commissioner's discretion did not violate the ex post facto clause. The petitioner had an indeterminate sentence, and was thus eligible for parole at any time. The guidelines enacted upgraded the severity ratings for certain crimes, making the petitioner presumptively eligible for parole in fifty two months. We held that the guidelines were policy rules, not laws. Further, as the Commissioner's discretion was not constrained, the guidelines did add to the prisoner's sentence.[16]

Alabama Department of Corrections Administrative Regulation 420 awards incentive good time on a discretionary basis. Section II(h) in effect in 1977, and its 1986 addition, are couched in broad, discretionary terms. The regulation does not increase a prisoner's sentence. We thus hold that Regulation 420 II(h) does not violate the ex post facto clause.

Accordingly, the judgment of the district court is AFFIRMED.

15. 744 F.2d 1543 (11th Cir.1984).

16. 744 F.2d at 1549.