PATTERSON, Judge.
The appellant, Jimmy A. Archie, Jr., appeals from the circuit court’s judgment denying his petition for a writ of habeas corpus.
In his petition, Archie asserts the following: in 1980, he was convicted of first degree robbery and rape and was sentenced to two concurrent sentences of 50 years’ imprisonment; on October 6, 1981, he was placed on incentive good time (IGT) status provided for by Act No. 182, 1975 AIa.Acts 176, No. 182 (July 29, 1976), which was codified as Ala. Code 1975, §§ 14-9-20 through -25[1]; and he was not removed from that status until November 1987, when he received a disciplinary for a minor infraction of a prison rule.
While most of Archie’s allegations are fragmented and somewhat convoluted and fail to clearly put the circuit court on notice of the exact issues raised, we adhere to the view that niceties of pleading are not favored in habeas corpus proceedings, Rice v. State, 460 So.2d 254 (Ala.Cr.App.1984). With this principle in mind, we find that, when Archie’s allegations are given a cohesive reading, they should have been treated on their merits. For example, Archie’s petition asserts that the Department of Corrections is not applying Act No. 182 according to the legislative intent so as to correctly calculate the IGT to be subtracted from his sentence. *479 Archie further states, “Petitioner [is] asking for equal protection under Johnny Powers v. State of Alabama, [546 So.2d 1000 (Ala.Cr.App.1987),] and Ex parte Powers v. State of Alabama at 546 So.2d [1004 (Ala.1988),] because not like Powers [he] has no past nor juvenile history and no bad prison record; but only one minor disciplinary.” In Powers v. State, this court interpreted Act No. 182 to provide that for every day of service, a qualified inmate is eligible for up to two days’ IGT credit, thus authorizing a three-day deduction for every day served. In Ex parte Powers, the Alabama Supreme Court agreed with this court’s interpretation of Act No. 182, but reversed the judgment and remanded the ease on the ground that the Department of Corrections had incorrectly calculated Powers’s IGT status because of its policy based upon an attorney general’s opinion stating that, under Act No. 182, the maximum deduction was two days for every day served, i.e., one day of IGT for every day served plus the day actually served. See also Warren v. State, 598 So.2d 1058 (Ala.Cr.App.1992), also cited by Archie. In general discussion, Archie also mentions Cox v. State, 628 So.2d 1075 (Ala.Cr.App.1993), wherein this court discussed the issue of whether the application of section (h) of Admin.Reg. 420 to deny IGT because of the inmate’s criminal record is contrary to the legislature’s expressed intent.[2] Archie also alleges that had he not been unconstitutionally removed from IGT status for a minor infraction, his sentence would have already been served.
As a final note, we point out that, in response to Archie’s petition, as amended, the state filed an answer and motion to dismiss wherein it asserts that Archie, in his petition, is alleging that the denial of good time is an ex post facto application; that he is being denied retroactive incentive deductions in an arbitrary manner; and that § 14-9-41 is in violation of the Equal Protection Clause and the ex post facto prohibition. The state addressed those allegations. It is abundantly clear that Archie’s IGT. is governed by Act No. 182, and thus the state’s motion not only completely misses the allegations asserted in Archie’s petition, but applies the wrong statutes governing Archie’s eligibility to earn good time and in calculating the good time earned. Is this any indication of the reliability of the Department’s calculations of an inmate’s good time?
Accordingly, this cause is remanded for the circuit court to treat the merits of Archie’s petition and to make specific findings of fact and conclusions of law. If the court determines that an evidentiary hearing is required, a transcript of that proceeding should be included in the return to remand along with the written statement of the court’s findings. The court shall take necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 56 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

ON RETURN TO REMAND

PATTERSON, Judge.
On January 13, 1995, this court remanded this cause for the circuit court to consider the *480 merits of Jimmy A. Archie, Jr.’s, petition for writ of habeas corpus and to make specific findings of fact and conclusions of law. In his petition, Archie asserts the following: that in 1980, he was convicted of first degree robbery and rape and was sentenced to two concurrent sentences of 50 years’ imprisonment; that on October 6,1981, he was placed on incentive good time (IGT) status, as provided by Act No. 182,1975 Ala.Acts (July 29, 1976), codified as Ala.Code 1975, §§ 14-9-20 through -25[1]; and that he was not removed from that status until November 1987, when he received a disciplinary for a minor infraction of a prison rule. With one exception, which we discuss below, the circuit court has complied with our order.
On return to remand, Archie argues that he has not been given credit for his time actually served between the date he started earning IGT and the date he was removed from IGT status. He is under the impression that to arrive at the correct release date, the time he actually served between those dates should be subtracted from the Department of Corrections release date. The Department calculated Archie’s release date, after giving Archie credit for his pretrial detention and statutory good time, as January 13, 2005. The Department reduced that time by the amount of IGT earned — 6 years and 27 days — to arrive at a release date of December 16, 1999, from which the 3 months’ earned good time was deducted for the disciplinary, to arrive at a release date of March 16, 1999.[2] Archie is under the impression that the time he actually served during the specified period (i.e., 6 years and 27 days) should be subtracted from March 16, 1999, giving him a release date of 1993. However, the Department’s release date already takes into account his time served — by taking the good time off the top, Archie has to serve the actual time until March 16,1999. We find that Archie has been properly credited with the actual time that he served while on IGT-earning status.
Archie also asserts that his IGT should have accumulated at the rate of three days for every day served (two days IGT plus the day actually served) rather than two. He relies on Ex parte Powers, 546 So.2d 1004 (Ala.1988), rev’g Powers v. State, 546 So.2d 1000 (Ala.Cr.App.1987). In Powers v. State, 546 So.2d at 1003, this court held that “Act 182 authorizes but does not require the Department of Corrections to grant a qualified inmate up to two days good time for every day he serves.” “This interpretation results in a total daily deduction in sentence of three days: two days good time plus the one day actually served.” Id. In Ex parte Powers, the Alabama Supreme Court agreed with this court’s interpretation of Act No. 182, but reversed the judgment and remanded the case on the ground that the Department of Corrections, in exercising its discretion in calculating Powers’s IGT, followed an erroneous attorney general’s opinion that stated that, under Act No. 182, the maximum deduction is two days for every day served, i.e., one day of IGT for every day served plus the day actually served. In remanding, the Court directed, “If the discretion exercised by the Board of Corrections was based upon an erroneous interpretation of the law, then the Board should exercise its discretion based upon a correct interpretation of the statute.” 546 So.2d at 1005.
Contrary to Archie’s impression, neither of the Powers opinions requires the Department to give two days of IGT for each day served. The Supreme Court in Ex parte Powers remanded simply for the Department to exercise its discretion, disregarding to the erroneous attorney general’s opinion. The evidence does not show that, in awarding Archie only one day of IGT for each day served, the Department relied on the errone *481 ous opinion. Thus, we uphold the circuit court’s finding that the Department was within its discretion in awarding Archie one day IGT credit for each day. served.
We must, however, remand this case again because the circuit court failed to address Archie’s allegation that the Department of Corrections is not applying Act No. 182 in the manner the Legislature intended so as to correctly calculate the IGT that is to be subtracted from his sentence. He specifically points to the arguable conflict between §§ 14-9-20 through -25 and Department of Corrections Administrative Regulation No. 420, which the Department promulgated to set forth the basis for determining an inmate’s eligibility for IGT. Section 14-9-20 states, “In order to encourage prison discipline, commutation of time shall be used as a reward for good behavior at the discretion of the board of corrections.” (Emphasis added.) Section 14-9-22 states, “It is the intent of this article that the custody classification provided for in section 14-9-21 be used by the board only in exceptional cases of good behavior and industriousness in order that inmates be given a meaningful incentive for good behavior.” (Emphasis added.) See also Powers v. State, 546 So.2d at 1003 (“The purpose of the act, as expressed in the title is ‘[t]o provide for commutation of time for certain prisoners for good behavior.’ ”). Admin.Reg. No. 420 specifically states in Section 11(h):
“Psychological and/or Sociological. Any inmate whose psychological or sociological profile contraindicates an early release back to society will not receive IGT. A history of repeated disciplinaries will constitute evidence of an inability to adjust and, therefore, a contraindication to IGT status. Since criminal record is an important element of sociological profile, repeated convictions for violent crimes against persons may be a contraindication to award of IGT status.”
The last sentence was added in 1986. Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir.1991).[3]
Archie’s oral argument in the evidentiary hearing on remand explains the basis for his argument:. ,
“State of Alabama, DOC, recognized or created a policy for inmates. This policy was known as an honor policy. Inmates found qualified to be placed in honor status. I was placed ... under that status, honorary status. And right now I’m in the highest level of incentive that they have, which is level three, and under the long-timers program. ... They are still using the nature of my offense[s] to hold me there ... —They are applying their discretion still arbitrarily by using the nature of my offense when regulation 420 does not recognize the nature of offense for award of IGT earning status. ... The whole .time I have been incarcerated during all progress reviews before social workers, before wardens, from the point of West Jefferson to every institution I have been in, they have used the nature of my offense[s] to bar me from any type of consideration from anything. ... They don’t pay any attention to any work report[s] that are being filed, recommendations that are" being filed, whether it is by a supervisor or a regular correctional counsel. They don’t pay any attention to those recommendations. They cannot simply state that they are not arbitrary. They cannot simply state that they are following the full extent of the law as to the time my crime was committed, the regulation that existed as to the time my crime was committed.”
On this second remand, the circuit court must first determine the basis on which the Department has denied and continues to deny Archie IGT-earning status. Attached to Archie’s petition and to the circuit court’s return to remand is the report and recommendation, entered April 19, 1993, of a magistrate of the United States District Court for the Northern District concerning a feder *482 al habeas corpus petition filed by Archie. The report refers to affidavits filed by Betty Teague, director of records for the Department, and Marion Shinbaum, director of classifications. The report states:
“Marion Shinbaum ... testified in her affidavit that petitioner is not receiving IGT credit because his offenses of robbery in the first degree and rape in the first degree ‘would not allow the Alabama Department of Corrections (ADOC) Classification Division to find that he satisfies the requirements of regulations regarding the award of IGT under Item II.h.[’].”
Upon this evidence, the federal magistrate found that Archie was precluded from earning additional IGT because “the Department of Corrections assessment that the nature of his crimes, rape and robbery in the first degree, contraindicate his early return to society.” However, in a more recent affidavit, which was sworn to on August 10, 1994, and which is attached to the state’s motion to dismiss, Betty Teague certified that when Archie received a disciplinary on November 3, 1987, “he was removed from IGT status since he was no longer considered to be an exceptional inmate.”
On remand, the circuit court is to consider this conflict, along with the following unrefut-ed facts before the circuit court at this point: that since 1980, Archie has received only one disciplinary; that that disciplinary was for a minor infraction of prison rules; that, for this disciplinary, he received less than the maximum penalty of loss of four months’ good time; that he has not received a disciplinary in over eight years; that, for at least five years, the Department has relied on the nature of Archie’s crimes to deny him IGT status; and that the federal magistrate found that the state failed to cite any “other disciplinary convictions or other apparent institutional problems” that Archie has had. It is further noteworthy that the state failed to refute, in the evidentiary hearing on remand, Archie’s argument quoted above, particularly those comments indicating the attention he has received for his allegedly good behavior and industriousness. The record before us does not show that Archie has any mar on his record in the 14 years that he has been incarcerated other than this one minor disciplinary.
We admit that we are troubled by the seemingly conflicting positions taken by the Department, and we strongly encourage the circuit court to open the proceedings for both parties to submit further evidence and present further argument. For example, it would be helpful to the court to know whether the Department is refusing IGT-earning status to all inmates who have incurred one minor disciplinary in 15 or so years, or whether the Department is refusing IGT-earning status to all inmates with no disciplinary in 8 or so years. Further probing by the court will provide a basis for its ultimate finding and for our review of that finding.
If the circuit court finds that the state has relied, in part or in whole, on the nature of Archie’s two crimes in denying him IGT-earning status, the court must determine whether that consideration is contrary to the legislature’s expressed intent, i.e., whether the application of section (h) of Admin.Reg. No. 420 to deny IGT because of the inmate’s criminal record is contrary to the legislature’s expressed intent. In Shelton v. Wright, 439 So.2d 55, 57 (Ala.1983), the Alabama Supreme Court stated:
“The fundamental rule of statutory construction is that a court is under a duty to ascertain and effectuate legislative intent as expressed in the statute, see e.g., Gundy v. Ozier, 409 So.2d 764, 765, 766 (Ala.1981), which may be gleaned from the language used, the reason and necessity for the act and the purpose sought to be obtained. See Rinehart v. Reliance Ins. Co., 273 Ala. 535, 538, 142 So.2d 254, 256 (1962).”
While it is true that the awarding of IGT is within the Department’s discretion, the limits of that discretion are dictated by the intent of the legislature.
In the event that the circuit court finds that the Department’s regulation allowing for consideration of an inmate’s criminal record contravenes the expressed intent of the Legislature to reward good behavior in prison, the court should hear evidence on and determine the question whether, without consideration of the nature of his crimes, Archie is an
*483 “(b) If a person:
“(1) On two separate occasions within a year prior to the commission of the instant offense of receiving stolen property is found in possession or control of stolen property; or
“(2) Possesses goods or property which have been recently stolen; or
“(3) Regularly buys, sells, or uses or handles in the course of business property of the sort received, and acquired the property without making reasonable inquiry whether the person selling or delivering the property to his had a legal right to do so, this shall be prima facie evidence that he has the requisite knowledge or belief.
“(c) The fact that the person who stole the property has not been convicted, apprehended or identified is not a defense to a charge of receiving stolen property.”
. Section 13A-8-17, Code of Alabama 1975, provides:
“(a) Receiving stolen property which exceeds $1,000.00 in value constitutes receiving stolen property in the first degree.
“(b) Receiving stolen property in the first degree is a Class B felony.”
This Court in Ladd v. State, 363 So.2d 1017, 1018 (Ala.Cr.App.1978) stated:
“To establish the offense of buying, receiving, or concealing stolen property, the following elements must be proved by the State: (1) the property must have been stolen; (2) the accused must have bought, received, concealed, or aided in concealing the property with the knowledge that it was stolen; and (3) the accused must have had no intention of returning the property to the owner.”
As this court further stated in Eldridge v. State, 415 So.2d 1190, 1197 (Ala.Cr.App.1982):
“To sustain a charge of receiving stolen property, the State must, prove that the property has been previously stolen. However, this and all elements of the crime need not be proved by direct evidence. The corpus delicti ‘may be proven by facts and circumstances from which the jury may infer that the offense has been committed.’ Tanner v. State, 37 Ala.App. 256, 261, 66 So.2d 827 (1952), cert. granted, 259 Ala. 306, 66 So.2d 836 (Ala.1953).”
Apparently, the trial court believed that the state’s evidence showed, as a matter of law, that the property at issue was stolen when the appellant purchased it. Here, the instruction given by the trial court denied the appellant his right to have the elements of the charge proved beyond a reasonable doubt.
“ ‘The jury’s overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction.’ ”
Deming v. City of Mobile, 677 So.2d 1233 (Ala.Cr.App.1995), quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 572, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977).
Having found that the instruction was erroneous and that it deprived the appellant of his constitutional right to due process of law, we review the state’s argument that the error was merely harmless.
“‘The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant’s guilt or innocence, United States v. Nobles, 422 U.S. 225, 230 [95 S.Ct. 2160, 2166, 45 L.Ed.2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.’ ”
Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986), quoting Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).
In Beard v. State, 612 So.2d 1335, 1346 (Ala.Cr.App.1992), we analyzed the harmless-error doctrine as follows.
“The Rose v. [Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) ] Court recognized that ‘[the Court has] repeatedly reaffirmed the principle that an otherwise *484 valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.’ Id. at 576, 106 S.Ct. at 3105 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Court cautioned, however, that although it ‘ “plainly ha[s] the authority” to decide whether, on the facts of a particular case, a constitutional error was harmless under the Chapman standard, [it] “does so sparingly.” Id. at 584, 106 S.Ct. at 3109 (quoting United States v. Hasting, 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983)). It further held that an erroneous jury instruction is harmless when all the evidence adduced at trial establishes the defendant’s guilt beyond a reasonable doubt, so that the reviewing court can conclude that the erroneous presumption did not contribute to the jury’s verdict.” Id. at 576, 106 S.Ct. at 3105.”
After a thorough review of the record, we cannot hold that the error was harmless beyond a reasonable doubt. As we stated in Beard: “We cannot confidently conclude, on the entire record, that the erroneous presumption that took from the jury’s consideration all the elements of the crime of murder-burglary did not contribute to the jury’s verdict.” 612 So.2d at 1347 (emphasis in original).
Because the fact that the property in question is stolen is one of the elements of the offense of receiving stolen property, we conclude that the erroneous presumption took away from the jury’s responsibility as trier of fact to evaluate all the elements of the crime.
For these reasons, the appellant’s conviction and sentence for receiving stolen property in the first degree must be reversed. In the interest of judicial economy, however, we will address another issue that may arise in subsequent proceedings.
II
The appellant contends that the trial court erred by denying his motion to suppress certain evidence, specifically the allegedly stolen radios which were seized as a result of the execution of the “anticipatory search warrant.” The appellant contends that the anticipatory search warrant was not authorized under Alabama law. “In general, a search warrant based upon ‘an affidavit showing probable cause that at some future time (but not presently) certain evidence of a crime will be located at a specific place’ is referred to as an anticipatory search warrant.” 2 W. LaFave, Search and Seizure § 3.7(c) (2d ed. 1987). “In other words, an anticipatory search warrant anticipates that certain specific events will occur after the issuance of the warrant, those future events creating the probable cause that supports the warrant. If the future events do not occur, the warrant is void.” Ex parte Oswalt, 686 So.2d 368, 372 (Ala.1996), citing United States v. Garcia, 882 F.2d 699 (2nd Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).
The Alabama Supreme Court recently addressed the validity of “anticipatory search warrants,” stating:
“[I]n order to determine whether a search warrant is authorized under Alabama law, we look to the specific language of Rule 3.8. The Rule reads:
“A search warrant authorized by this rule may be issued if there is probable cause to believe the property sought:
“(1) Was unlawfully obtained;
“(2) Was used as the means of committing or attempting to commit any offense under the laws of the State of Alabama or any political subdivision thereof;
“(3) Is in the possession of any person with intent to use it as a means of committing a criminal offense, or is in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery; or
“(4) Constitutes evidence of a criminal offense under the law of the State of Alabama or any political subdivision thereof.”
Ex parte Oswalt, 686 So.2d at 373. (Emphasis in original.)
*485 exceptional inmate when compared to the general inmate population. If the court finds that he is, the court’s must then determine the amount of IGT to retroactively credit to Archie.
Because if the circuit court determines that Archie’s allegation is meritorious, his sentence may already have been served, the court shall take necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.*
All Judges concur.

. These statutes were repealed by the Alabama Correctional Incentive Time Act, Act No. 80-446, 1980 AIa.Acts 690 (May 19, 1980), codified as §§ 14-9-40 through -44; they were retained to the extent that they apply to prisoners serving time before May 19, 1980, and to persons who committed offenses prior to May 19, 1980. § 14-9-43.

. Attached to Archie’s petition is the report and recommendation, entered April 19, 1993, of a magistrate of the United States District Court for the Northern District concerning a federal habe-as corpus petition filed by Archie. The report refers to affidavits filed by Betty Teague, Director of Records for the Department, and Marion Shinbaum, Director of Classifications. The report quotes section (h) of Admin.Reg.' 420 and states:
"Marion Shinbaum ... testified in her affidavit that petitioner is not receiving IGT credit because his offenses of robbery in the first degree and rape in the first degree ‘would not allow the Alabama Department of Corrections (ADOC) Classification Division to find that he satisfies the requirements of regulations regarding the award of IGT under Item II.h.[’] ... [P]etitioner [has been precluded] from earning additional good-time credits [because of] the Department of Corrections assessment that the nature of his crimes ... contraindicate his early return to society.”
In a more recent affidavit, which was sworn to on August 10, 1994, and which is attached to the state’s motion to dismiss, Betty Teague certified that when Archie received a disciplinary on November 3, 1987, "he was removed from IGT status since he was no longer considered to be an exceptional inmate." The record before us does not show that Archie has any other mar on his record in the 14 years that he has been incarcerated.

. Sections 14-9-20 through -25 were repealed by the Alabama Correctional Incentive Time Act, Act No. 80-446, 1980 Ala.Acts (May 19, 1980), codified as §§ 14-9-40 through -44; they were retained to the extent that they continue to apply to prisoners serving time before May 19, 1980, and to persons who committed offenses before May 19, 1980. § 14-9-43.

. The affidavit of the director of records shows a final release date of March 16, 1999. However, this date is obviously incorrect: the three months of good time deducted as a result of Archies’s disciplinary must be added to December 16, 1999, thus arriving at a release date of March 16, 2000.

. Archie also argues that the Department is -using the revised Admin.Reg. No. 420 which, he argues, is more onerous than the regulation as it existed when he committed the crimes and when he was placed on IGT earning status in 1981. He claims that the earlier version did not require that the nature of the crimes be considered. This argument has been considered and rejected in Conlogue v. Shinbaum, 949 F.2d 378 (11th Cir.1991).

 Note from the reporter of decisions: On January 30, 1998, on return to remand, the Court of Criminal Appeals affirmed, without opinion.