On January 13, 1995, this court remanded this cause for the circuit court to consider the *Page 480 
merits of Jimmy A. Archie, Jr.'s, petition for writ of habeas corpus and to make specific findings of fact and conclusions of law. In his petition, Archie asserts the following: that in 1980, he was convicted of first degree robbery and rape and was sentenced to two concurrent sentences of 50 years' imprisonment; that on October 6, 1981, he was placed on incentive good time (IGT) status, as provided by Act No. 182, 1975 Ala. Acts (July 29, 1976), codified as Ala. Code 1975, §§14-9-20 through -25[1]; and that he was not removed from that status until November 1987, when he received a disciplinary for a minor infraction of a prison rule. With one exception, which we discuss below, the circuit court has complied with our order.
On return to remand, Archie argues that he has not been given credit for his time actually served between the date he started earning IGT and the date he was removed from IGT status. He is under the impression that to arrive at the correct release date, the time he actually served between those dates should be subtracted from the Department of Corrections release date. The Department calculated Archie's release date, after giving Archie credit for his pre-trial detention and statutory good time, as January 13, 2005. The Department reduced that time by the amount of IGT earned — 6 years and 27 days — to arrive at a release date of December 16, 1999, from which the 3 months' earned good time was deducted for the disciplinary, to arrive at a release date of March 16, 1999.[2] Archie is under the impression that the time he actually served during the specified period (i.e., 6 years and 27 days) should be subtracted from March 16, 1999, giving him a release date of 1993. However, the Department's release date already takes into account his time served — by taking the good time off the top, Archie has to serve the actual time until March 16, 1999. We find that Archie has been properly credited with the actual time that he served while on IGT-earning status.
Archie also asserts that his IGT should have accumulated at the rate of three days for every day served (two days IGT plus the day actually served) rather than two. He relies on Ex partePowers, 546 So.2d 1004 (Ala. 1988), rev'g Powers v. State,546 So.2d 1000 (Ala.Cr.App. 1987). In Powers v. State, 546 So.2d at 1003, this court held that "Act 182 authorizes but does not require the Department of Corrections to grant a qualified inmate up to two days good time for every day he serves." "This interpretation results in a total daily deduction in sentence of three days: two days good time plus the one day actually served." Id. In Ex parte Powers, the Alabama Supreme Court agreed with this court's interpretation of Act No. 182, but reversed the judgment and remanded the case on the ground that the Department of Corrections, in exercising its discretion in calculating Powers's IGT, followed an erroneous attorney general's opinion that stated that, under Act No. 182, the maximum deduction is two days for every day served, i.e., one day of IGT for every day served plus the day actually served. In remanding, the Court directed, "If the discretion exercised by the Board of Corrections was based upon an erroneous interpretation of the law, then the Board should exercise its discretion based upon a correct interpretation of the statute." 546 So.2d at 1005.
Contrary to Archie's impression, neither of thePowers opinions requires the Department to give two days of IGT for each day served. The Supreme Court in Ex parte Powers
remanded simply for the Department to exercise its discretion, disregarding to the erroneous attorney general's opinion. The evidence does not show that, in awarding Archie only one day of IGT for each day served, the Department relied on the erroneous *Page 481 
opinion. Thus, we uphold the circuit court's finding that the Department was within its discretion in awarding Archie one day IGT credit for each day served.
We must, however, remand this case again because the circuit court failed to address Archie's allegation that the Department of Corrections is not applying Act No. 182 in the manner the Legislature intended so as to correctly calculate the IGT that is to be subtracted from his sentence. He specifically points to the arguable conflict between §§ 14-9-20 through -25 and Department of Corrections Administrative Regulation No. 420, which the Department promulgated to set forth the basis for determining an inmate's eligibility for IGT. Section 14-9-20
states, "In order to encourage prison discipline, commutation of time shall be used as a reward for good behavior at the discretion of the board of corrections." (Emphasis added.) Section 14-9-22 states, "It is the intent of this article that the custody classification provided for in section 14-9-21 be used by the board only in exceptional cases of good behaviorand industriousness in order that inmates be given a meaningfulincentive for good behavior." (Emphasis added.) See also Powersv. State, 546 So.2d at 1003 ("The purpose of the act, as expressed in the title is '[t]o provide for commutation of time for certain prisoners for good behavior.' "). Admin.Reg. No. 420 specifically states in Section II(h):
 "Psychological and/or Sociological. Any inmate whose psychological or sociological profile contraindicates an early release back to society will not receive IGT. A history of repeated disciplinaries will constitute evidence of an inability to adjust and, therefore, a contraindication to IGT status. Since criminal record is an important element of sociological profile, repeated convictions for violent crimes against persons may be a contraindication to award of IGT status."
The last sentence was added in 1986. Conlogue v. Shinbaum949 F.2d 378, 380 (11th Cir. 1991).[3]
Archie's oral argument in the evidentiary healing on remand explains the basis for his argument:
 "State of Alabama, DOC, recognized or created a policy for inmates. This policy was known as an honor policy. Inmates found qualified to be placed in honor status. I was placed . . . under that status, honorary status. And right now I'm in the highest level of incentive that they have, which is level three, and under the long-timers program. . . . They are still using the nature of my offense[s] to hold me there . . . — They are applying their discretion still arbitrarily by using the nature of my offense when regulation 420 does not recognize the nature of offense for award of IGT earning status. . . . The whole time I have been incarcerated during all progress reviews before social workers, before wardens, from the point of West Jefferson to every institution I have been in, they have used the nature of my offense[s] to bar me from any type of consideration from anything. . . . They don't pay any attention to any work report[s] that are being filed, recommendations that are being filed, whether it is by a supervisor or a regular correctional counsel. They don't pay any attention to those recommendations. They cannot simply state that they are not arbitrary. They cannot simply state that they are following the full extent of the law as to the time my crime was committed, the regulation that existed as to the time my crime was committed."
On this second remand, the circuit court must first determine the basis on which the Department has denied and continues to deny Archie IGT-earning status. Attached to Archie's petition and to the circuit court's return to remand is the report and recommendation, entered April 19, 1993, of a magistrate of the United States District Court for the Northern District concerning a federal *Page 482 
habeas corpus petition filed by Archie. The report refers to affidavits filed by Betty Teague, director of records for the Department, and Marion Shinbaum, director of classifications. The report states:
 "Marion Shinbaum . . . testified in her affidavit that petitioner is not receiving IGT credit because his offenses of robbery in the first degree and rape in the first degree 'would not allow the Alabama Department of Corrections (ADOC) Classification Division to find that he satisfies the requirements of regulations regarding the award of IGT under Item II.h.[']."
Upon this evidence, the federal magistrate found that Archie was precluded from earning additional IGT because "the Department of Corrections assessment that the nature of his crimes, rape and robbery in the first degree, contraindicate his early return to society." However, in a more recent affidavit, which was sworn to on August 10, 1994, and which is attached to the state's motion to dismiss, Betty Teague certified that when Archie received a disciplinary on November 3, 1987, "he was removed from IGT status since he was no longer considered to be an exceptional inmate."
On remand, the circuit court is to consider this conflict, along with the following unrefuted facts before the circuit court at this point: that since 1980, Archie has received only one disciplinary; that that disciplinary was for a minor infraction of prison rules; that, for this disciplinary, he received less than the maximum penalty of loss of four months' good time; that he has not received a disciplinary in over eight years; that, for at least five years, the Department has relied on the nature of Archie's crimes to deny him IGT status; and that the federal magistrate found that the state failed to cite any "other disciplinary convictions or other apparent institutional problems" that Archie has had. It is further noteworthy that the state failed to refute, in the evidentiary hearing on remand, Archie's argument quoted above, particularly those comments indicating the attention he has received for his allegedly good behavior and industriousness. The record before us does not show that Archie has any mar on his record in the 14 years that he has been incarcerated other than this one minor disciplinary.
We admit that we are troubled by the seemingly conflicting positions taken by the Department, and we strongly encourage the circuit court to open the proceedings for both parties to submit further evidence and present further argument. For example, it would be helpful to the court to know whether the Department is refusing IGT-earning status to all inmates who have incurred one minor disciplinary in 15 or so years, or whether the Department is refusing IGT-earning status to all inmates with no disciplinary in 8 or so years. Further probing by the court will provide a basis for its ultimate finding and for our review of that finding.
If the circuit court finds that the state has relied, in part or in whole, on the nature of Archie's two crimes in denying him IGT-earning status, the court must determine whether that consideration is contrary to the legislature's expressed intent, i.e., whether the application of section (h) of Admin.Reg. No. 420 to deny IGT because of the inmate's criminal record is contrary to the legislature's expressed intent. InShelton v. Wright, 439 So.2d 55, 57 (Ala. 1983), the Alabama Supreme Court stated:
 "The fundamental rule of statutory construction is that a court is under a duty to ascertain and effectuate legislative intent as expressed in the statute, see e.g., Gundy v. Ozier, 409 So.2d 764, 765, 766 (Ala. 1981), which may be gleaned from the language used, the reason and necessity for the act and the purpose sought to be obtained. See Rinehart v. Reliance Ins. Co., 273 Ala. 535, 538, 142 So.2d 254, 256 (1962)."
While it is true that the awarding of IGT is within the Department's discretion, the limits of that discretion are dictated by the intent of the legislature.
In the event that the circuit court finds that the Department's regulation allowing for consideration of an inmate's criminal record contravenes the expressed intent of the Legislature to reward good behavior in prison, the court should hear evidence on and determine the question whether, without consideration of the nature of his crimes, Archie is an *Page 483 
exceptional inmate when compared to the general inmate population. If the court finds that he is, the court's must then determine the amount of IGT to retroactively credit to Archie.
Because if the circuit court determines that Archie's allegation is meritorious, his sentence may already have been served, the court shall take necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.*
All Judges concur.
[1] Sections 14-9-20 through -25 were repealed by the Alabama Correctional Incentive Time Act, Act No. 80-446, 1980 Ala. Acts (May 19, 1980), codified as §§ 14-9-40 through -44; they were retained to the extent that they continue to apply to prisoners serving time before May 19, 1980, and to persons who committed offenses before May 19, 1980. § 14-9-43.
[2] The affidavit of the director of records shows a final release date of March 16, 1999. However, this date is obviously incorrect: the three months of good time deducted as a result of Archies's disciplinary must be added to December 16, 1999, thus arriving at a release date of March 16, 2000.
[3] Archie also argues that the Department is using the revised Admin.Reg. No. 420 which, he argues, is more onerous than the regulation as it existed when he committed the crimes and when he was placed on IGT earning status in 1981. He claims that the earlier version did not require that the nature of the crimes be considered. This argument has been considered and rejected in Conlogue v. Shinbaum, 949 F.2d 378 (11th Cir. 1991).
* Note from the reporter of decisions: On January 30, 1998, on return to remand, the Court of Criminal Appeals affirmed, without opinion.