[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13455
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-21731-CV-UUB

DREW C. HARTLEY,

Petitioner-Appellant,

versus

WARDEN OF FLORIDA STATE PRISON,
ATTORNEY GENERAL OF FLORIDA,

Respondents-Appellees.

_____

No. 08-15292
Non-Argument Calendar
_____

D. C. Docket No. 07-22683-CV-MGC

DREW C. HARTLEY,

Petitioner-Appellant,

versus

WARDEN RANDALL BRYANT,

                                                            Respondent,

ATTORNEY GENERAL OF THE STATE OF FLORIDA,
Bill McCollum,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
Walter A. McNeil,

                                                            Respondents-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(November 10, 2009)

Before TJOFLAT, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner, Drew C. Hartley, is a Florida prison inmate. He petitioned the

district court pursuant to 28 U.S.C. §§ 2241 and 2254 for a writ of habeas corpus,

seeking relief from the loss of eligibility to earn incentive gain-time following a

disciplinary proceeding. The district court dismissed his petitions on the ground

that he failed to make a substantial showing of the denial of a federal right. He

appealed the court's decision, and we granted a certificate of appealability on one

2

issue: "Whether the district court erred in concluding that liberty interests were not implicated by [petitioner's] loss of the eligibility to earn incentive gain-time because of his disciplinary report."

"[S]tate statutes may create liberty interests that are entitled to procedural protections of the Due Process clause [of the Fourteenth Amendment]." Vitek v. Jones, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). A petitioner states a cognizable claim that he has been denied due process of law if he shows "a legitimate claim of entitlement . . . through statutory language creating a protectable expectation." Slocum v. Georgia State Bd. of Pardons & Paroles, 678 F.2d 940, 941 (11th Cir. 1982). In Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991), we held that no due process liberty interest arose from the possibility that a prisoner may receive a discretionary grant of incentive good time. See also Francis v. Fox, 838 F.2d 1147, 1149 (11th Cir. 1988) ("when the statute is framed in discretionary terms there is not a liberty interest created."). The question we must decide is whether Florida law, including regulations governing the custody of prison inmates, creates a legitimate expectation that an inmate will earn gain-time under the relevant circumstances, not solely on the basis of a state decision-maker's exercise of discretion. See Sultenfuss v. Snow, 35 F.3d 1494, 1499-1500 (11th Cir. 1994) (en banc) (parole context).

3

Florida law provides the following, with respect to incentive gain-time:

(1) The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.

(2)(a) The department shall establish for each prisoner sentenced to a term of years a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.
. . . .
(3)(a) The department shall also establish for each prisoner sentenced to a term of years a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section. The initial tentative release date shall be determined by deducting basic gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.
. . . .
(4)(b) For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph. The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the

4

inmate was sentenced.

. . . .

3. For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed. For purposes of this subparagraph, credits awarded by the court for time physically incarcerated shall be credited toward satisfaction of 85 percent of the sentence imposed. Except as provided by this section, a prisoner shall not accumulate further gain-time awards at any point when the tentative release date is the same as that date at which the prisoner will have served 85 percent of the sentence imposed. State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.

. . . .

(7) The department shall adopt rules to implement the granting, forfeiture, restoration, and deletion of gain-time.

Fla. Stat. § 944.275 (2009).

The Florida Administrative Code contains procedures concerning award of incentive gain-time. Subsection (3) of Section 33-601.101 sets forth detailed methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components." Many factors are considered, including hygiene, appearance of clothing, adherence to rules and respect for others, maintenance of living quarters, work performance, and program performance. Id.

5

Subsections (5) and (6) provide:

(5) Disqualifications. The following conditions will disqualify an inmate for an award of incentive gain time for the period stated.

(6) Inmates in disciplinary confinement status are not eligible for a work/program rating even if assigned to work or programs while in disciplinary confinement. . .

(a) Disciplinary or court action. An inmate is not eligible to receive incentive gain time for the month in which there is an infraction of the rules of the Department or the laws of the State for which he is found guilty . . . Any inmate who is found guilty of a disciplinary report on or after April 21, 1996 and who is serving a sentence imposed for an offense committed on or after October 1, 1995 shall be eligible to earn incentive gain time as follows: . . .

2. For disciplinary reports in which the final approved action is less than or equal to 30 days confinement or less than or equal to 30 days loss of gain time, the inmate shall not be eligible to earn incentive gain time for three months following the month in which the disciplinary infraction occurred. The three month period of ineligibility shall not begin to run until the inmate is in the department's custody and would be otherwise eligible to earn gain time but for the disciplinary action or new offense.

3. For disciplinary reports in which the final approved action is greater than 30 days confinement or greater than 30 days loss of gain time, or where the inmate was convicted of an offense occurring while committed to the Department of Corrections, the inmate shall not be eligible to earn incentive gain time for six months following the month in which the disciplinary infraction

6

> or offense occurred. The six month period of ineligibility shall not begin to run until the inmate is in the department's custody and would be otherwise eligible to earn gain time but for the disciplinary action or new offense.

F.A.C. 33-601.101 (2005).

Here, nothing in Florida law required the prison officials to grant petitioner incentive gain-time, even in the absence of either the April 2005 or the May 2005 disciplinary decision. See Fla.Stat. § 944.275; F.A.C. 33-601.101. Indeed, whether he would have actually been awarded incentive gain-time in any given month depended upon a number of factors tied to his future behavior, and the amount of the gain-time awarded, if any, was entirely within the discretion of the Department of Corrections officials who were making these evaluations. See Fla.Stat. § 944.275; F.A.C. 33-601.101; Francis, 838 F.2d at 1149. Thus, petitioner cannot show that he had a legitimate expectation of gain-time. See Sultenfuss, 35 F.3d at 1499-1500. Therefore, the loss of the eligibility to earn incentive gain-time provided by Florida law is not a sufficient liberty interest to invoke the protections of the Due Process Clause.

The judgment of the district court is, accordingly,

AFFIRMED.

7