794 So.2d 307 (2000)
Ex parte Douglas BERRY.
(Re Douglas Berry v. Alabama Department of Corrections).
1990230.
Supreme Court of Alabama.
September 1, 2000.
Rehearing Denied December 15, 2000.
Douglas Berry, petitioner, pro se.
Andrew W. Redd, general counsel, and William F. Addison, asst. general counsel, Department of Corrections, for respondent.
COOK, Justice.
Douglas Berry, an Alabama prisoner, appealed from the circuit court's summary dismissal of his writ of habeas corpus. The Court of Criminal Appeals, on September 10, 1999, affirmed by an unpublished memorandum, Berry v. Alabama Dep't of Corrections, (No. CR-98-1789) 778 So.2d 882 (1999) (table). We granted Berry's petition for certiorari review.
*308 Berry argues that the Department of Corrections, without providing him due process, deprived him of a liberty interest he claimed in remaining a part of the work-release program, by removing him from work-release status. Berry's removal from work-release status was the result of an administrative change in the criteria that determined an inmate's eligibility for the program. Berry further argues that the Department of Corrections' policy and procedures created on the part of an inmate a liberty interest in retaining work-release status.
On December 8, 1992, Berry began participating in the work-release program, and he continued to do so for over six years. On February 12, 1999, his work-release status was revoked. On March 17, 1999, he was notified that he was to appear before a reclassification committee on March 18, 1999. On March 18, the reclassification committee informed Berry that he was being reclassified as a "heinous offender," pursuant to new criteria that became effective on February 3, 1999. The committee also informed Berry that because of his new classification as a "heinous offender" he was permanently ineligible to participate in the work-release program. Berry argues that he was entitled to a due-process hearing, as provided by the Department of Corrections' Classification Manual, before the Department of Corrections could revoke his work-release status.
The United States Constitution has not been interpreted to confer on inmates a liberty interest in work-release programs. See Whitehorn v. Harrelson, 758 F.2d 1416 (11th Cir.1985). Nor has Alabama law. See Francis v. Fox, 838 F.2d 1147 (11th Cir.1988). In Fox, the United States Court of Appeals for the Eleventh Circuit stated: "The existence of a liberty interest in work-release arising from state law depends on the extent to which official discretion has been constrained by statute, regulation, or practice." Id. at 1149. Section 14-8-2(a), Ala.Code 1975, allows inmates to leave the prison facility and work at paid employment "at the discretion of the [B]oard [of Corrections]." Therefore, the statute governing work release does not confer a liberty interest, but leaves any inmate's participation in the work-release program to the discretion of the Board of Corrections. The Eleventh Circuit further held in Fox that the regulations employed in that case protected the Department's discretion in choosing inmates for the work-release program. Fox, 838 F.2d at 1149-50.
However, Berry argues that the Department of Corrections' Classification Manual, not the statute, created a liberty interest, by stating: "No due process hearing is required for transfers among institutions other than removal from full work release status including free world employment, PDL or SIR." (Emphasis added.) The Classification Manual, by requiring a due-process hearing before an inmate is removed from full work-release status, imposes a restriction on the discretionary power of the Board of Corrections.
This Court has not previously addressed the issue whether the Department of Corrections' regulation and practice confers upon an inmate a liberty interest in participating in the work-release program. However, the Eleventh Circuit has previously addressed this issue. In Whitehorn v. Harrelson, 758 F.2d 1416, 1422 (11th Cir.1985), the Eleventh Circuit narrowed the issue to "whether the State of Alabama, by statute, regulation, or practice, created a liberty interest in the plaintiff's continued participation in the Alabama work release program that could not properly be revoked without due process of *309 law." In answering that question the Eleventh Circuit wrote:
"The rules and procedures set forth in the Handbook suggest that the Alabama Department of [Corrections'] discretion to terminate a prisoner's work release status is a guided discretion that cannot be exercised for any reason or for no reason at all. This limitation on the prison administration's discretion, coupled with the severity of the loss of conditional liberties enjoyed by a participant in the work release program, tends to establish a legitimate expectation [of] or entitlement to the plaintiff's continued participation in the work release program.... Moreover, although the plaintiff has asserted that his protected liberty interest stems, at least in part, from the practices of the prison administration, there has been no factual development in the case concerning these practices. All of these elements must be considered before a determination can be made of the nature of the plaintiff's protected liberty interest, if any, its scope, and the due process protections implicated by its revocation.
". . . .
"`... [T]he practices of a state may be determinative, for even if a state by statute or regulation explicitly refuses to grant inmates certain liberty interests, practices of a state may nevertheless give rise to those same liberty interests.'"
Id. at 1424 (quoting Parker v. Cook, 642 F.2d 865, 876 (5th Cir.1981)). The Eleventh Circuit held that Whitehorn had "raised a genuine issue of material fact as to the regulations applicable at the time his work release status was revoked and as to the official prison practices regarding revocation of work release" and that the "[s]ummary dismissal of Whitehorn's claim was, therefore, inappropriate." Id. at 1425.
Similarly, in this present case Berry argues that the procedures set out in the Classification Manual require a due-process hearing before an inmate's participation in the work-release program can be terminated. Berry has provided this Court with the portion of the Department of Corrections' Classification Manual that contains the language stating that "[n]o due process hearing is required for transfers among institutions other than removal from full work release status including free world employment, PDL or SIR." Berry also alleges that it has been the practice of the Department of Corrections to remove inmates from the work-release program only after the inmate commits some infraction of an administrative rule or regulation. The language in the Classification Manual prevents the Department of Corrections from arbitrarily removing an inmate from the work-release program, and, by doing so, creates a liberty interest in an inmate's continued participation in the work-release program. Therefore, the circuit court erred in summarily dismissing Berry's petition for the writ of habeas corpus. Berry's petition creates a genuine issue of material fact as to the applicability of the regulation to his work-release status.
The judgment of the Court of Criminal Appeals is reversed, and the case is remanded for that court to remand to the circuit court for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., dissent.
*310 HOOPER, Chief Justice (dissenting).
I must respectfully dissent. The main opinion relies on Whitehorn v. Harrelson, 758 F.2d 1416 (11th Cir.1985), for the determination that the Department of Corrections manual has given Douglas Berry a liberty interest in his work-release status. However, in Whitehorn, the United States Court of Appeals for the Eleventh Circuit stated that the revocation of work-release status may "trigger the protections of the due process clause if the State of Alabama, through its statutes, regulations, or official practices has placed substantive restrictions on the prison administration's discretion to revoke work release participation." 758 F.2d at 1426. That court found material questions of fact as to whether the practices of the Department of Corrections had placed restrictions on the Department's discretion to revoke an inmate's work-release status; therefore, the summary judgment was inappropriate.
The Eleventh Circuit noted that a full factual development was required for a resolution of the issue: "The court must examine the statute creating the program, the regulations governing work release, and the practices of the prison officials in administering the program to determine whether any of these sources place a restriction on the prison official's discretion to revoke a prisoner's work release status." 758 F.2d at 1422. Although the Whitehorn court stated that the rules and procedures listed in the handbook "suggest[ed]" that the discretion to terminate a prisoner's work-release status may be limited, the court held that the issue should be resolved by the district court.
Following Whitehorn, I would reverse the dismissal and remand the case for further proceedings in the trial court, rather than expressly finding that the Classification Manual created a liberty interest in Berry's continued participation in the work-release program.
BROWN, Justice (dissenting).
I dissent from this Court's judgment and opinion, which has the effect of reversing the summary dismissal of Berry's petition for the writ of habeas corpus. I dissent for the following reasons.
First, Berry's petition for certiorari review does not comply with the requirements of Rule 39, Ala.R.App.P., because he did not incorporate in his petition a statement of additional facts presented to the Court of Criminal Appeals with his application for rehearing and he did not attach a copy of such a statement to his petition. Indeed, an examination of the Court of Criminal Appeals' ruling on Berry's application for rehearing reveals that Berry did not file with his application for rehearing a Rule 39(k) motion for a statement of additional facts. Therefore, certiorari review by this Court is precluded. See Ex parte Winchester, 544 So.2d 967 (Ala.1989); Ex parte Moore, 493 So.2d 988 (Ala.1986).
Moreover, part of the evidence upon which the majority bases its decision to reverse the judgment of the Court of Criminal Appeals is not contained in the record on appeal. Rather, this evidence consisting of copies of Berry's "24 Hour Advance Notification of Pending Reclassification"; correspondence from the Department of Corrections' director of classification to Berry; an excerpt from the Department of Corrections' Classification Manual; and a copy of a change in the classification policyis contained in an addendum to Berry's supplemental brief, and those items are identified as Appendices A, B, C, and D. Only the form identified as Appendix A is included in the record on appeal. (C.R.22.) "[A]ttachments to briefs are not considered part of the record and therefore cannot be considered on appeal." *311 Chandler v. State, 677 So.2d 1286, 1287 (Ala.Crim.App.1996); Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991).
Further, I do not believe Berry had a protected liberty interest that triggered the due-process requirements established in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court set out the standard by which to evaluate whether alleged liberty interests are protected by the Due Process Clause, and, thus, entitled to the procedural protections outlined in Wolff v. McDonnell:
"The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum [v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
Sandin, 515 U.S. at 483-84, 115 S.Ct. 2293 (citations omitted).
Both our state courts and federal courts have long held that inmates of Alabama's prison system do not have a liberty interest with respect to their classification. See Handley v. State, 549 So.2d 630, 631 (Ala.Crim.App.1989) (citing Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The courts have likewise held that this state's work-release statutes do not confer a liberty interest on inmates. See Dukes v. State, 576 So.2d 683 (Ala.Crim.App.1991); Francis v. Fox, 838 F.2d 1147 (11th Cir.1988).
Finally, even if we determined that the information contained in the appendices to Berry's supplemental brief is properly before us, it would not entitle him to relief. Berry contends that he was entitled to procedural due process before being removed from work release. Indeed, there is some support for his contention. The administrative provision concerning an inmate's reclassification (Appendix C) states that "No due process hearing is required for transfers among institutions other than removal from full work release status including free world employment, PDL or SIR." Under Wolff, an inmate facing a disciplinary proceeding is entitled to notice of the claimed violation, a right to call witnesses and to present documentary evidence in his behalf, and a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. at 563, 94 S.Ct. 2963; Brown v. State, 592 So.2d 621, 623 (Ala.1991).
The record indicates that Berry's reclassification hearing substantially complied with the requirements set out in Wolff v. McDonnell. He was served with a "24 Hour Advance Notification of Pending Reclassification" (C.R. 22; Appendix A). That notice advised Berry that he would meet with a reclassification team that was to determine if a change in classification criteria necessitated a change in his placement and/or custody. The notice further advised Berry that, during the meeting, he would be given an opportunity to be heard, to present witnesses, and to present documentary evidence. Also, the reclassification team provided Berry a written statement as to the evidence relied on and the reasons for the team's action, namely, that the crime for which Berry was convicted *312 constituted a "heinous crime," "heinous" because he had murdered his wife in order to receive the proceeds from an insurance policy. In addition, the reclassification team's decision was supported by "some evidence." See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Headley v. State, 720 So.2d 996, 997 (Ala.Crim.App.1998). Thus, Berry was entitled to no more "process" than he actually received.
I would affirm the Court of Criminal Appeals' judgment affirming the order dismissing Berry's petition for the writ of habeas corpus.
SEE, J., concurs.