803 So.2d 586 (2001)
Clemmie J. NEAL
v.
STATE.
CR-00-1076.
Court of Criminal Appeals of Alabama.
May 25, 2001.
*587 Clemmie J. Neal, appellant, pro se.
Andrew W. Redd, general counsel, and William F. Addison, asst. general counsel, Department of Corrections, for appellee.
COBB, Judge.
Clemmie J. Neal appeals the circuit court's dismissal of his petition for a writ of habeas corpus. The petition claimed that he was denied due process of law when he was reclassified as a "heinous offender" by the Department of Corrections and removed from work release. The trial court denied the habeas corpus petition. On appeal, Neal argues that his removal from the work-release program deprived him of a liberty interest; that the trial court erred in charging him a filing fee; and that the trial court erred when it ordered the Department of Corrections to withhold 25% of his funds to pay the filing fee. Under the authority of Ex parte Berry, 794 So.2d 307 (Ala.2000), we reverse the judgment and remand the case.
After appearing before a reclassification committee, Berry was informed that his work-release status was being revoked and that he was being reclassified as a "heinous offender" because of new classification criteria. The Alabama Supreme Court stated that the language in the Classification Manual released by the Department of Corrections prevents the Department of Corrections from "arbitrarily removing an inmate from the workrelease program," and "creates a liberty interest in an inmate's continued participation in the work-release program." Ex parte Berry, 794 So.2d at 309. The Department of Corrections' Classification Manual creates a liberty interest by requiring a due-process hearing before an inmate is removed from full work-release status. Id.[1]
In the present case, Neal also alleged that he was removed from work release and reclassified as a "heinous offender" without the benefit of a due-process hearing. Neal's work-release status was revoked on June 20, 1996, after he appeared before a reclassification committee. The committee's report stated only that Neal was being reclassified and his eligibility for work release was being changed because of a Commissioner's directive of May 8, 1996. The record does not reflect that *588 Neal was afforded any due-process protections at the reclassification hearing.
Based on Ex parte Berry, we hold that the circuit court erred in summarily dismissing Neal's petition for a writ of habeas corpus. We reverse the judgment and remand this case to the trial court with instructions that it enter an order vacating Neal's removal from work release.
Neal has also argued that the circuit court improperly ordered the Department of Corrections to withhold 25% of the deposits to his prison account until the court costs were paid in this case, and that the costs of $187 assessed by the circuit court was an error because § 12-19-71 provides for a docket fee of only $140. Although we are reversing on another issue, we address these issues because they are likely to arise on remand.
Initially, we note that Neal is raising these issues for the first time on appeal and he has not preserved them for review. The general rules of preservation require that an issue first be presented to the trial court so that that court may have the opportunity to correct any mistakes that may have occurred. "`[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.... An issue raised for the first time on appeal is not correctly before this court.'" McKinney v. State, 654 So.2d 95, 101 (Ala.Crim.App.1995)(quoting Buice v. State, 574 So.2d 55, 57 (Ala.Crim.App. 1990)). See Also Parker v. State, 687 So.2d 1279, 1280 (Ala.Crim.App. 1996)(claims raised for the first time on appeal of the denial of a petition for a writ of habeas corpus are not preserved for appellate review).
Moreover, docket fees can be waived for indigent petitioners because of the processes that allow an indigent inmate to repay those costs. "The docket fee may be waived initially and taxed as costs at the conclusion of the case if the court finds that payment of the fee will constitute a substantial hardship. A verified statement of substantial hardship, signed by the plaintiff and approved by the court, shall be filed with the clerk of court." § 12-19-70(b), Ala.Code 1975. Therefore, Neal's argument regarding the taxing of the filing fees at the conclusion of his case is without merit.
Likewise, Neal's contention that he was assessed an incorrect fee of $187 is also without merit. While § 12-19-71, Ala.Code 1975, does provide for a docket fee of $140, separate county costs that increase the amount of the costs taxed at the end of a habeas-corpus claim are imposed when a petitioner has been granted indigent status. Various costs for the county law library, the county treasury, and the juvenile court services board were assessed as costs in this case. These costs have been added through separate legislative acts. The law library fee was added pursuant to Act No. 79-751, Ala. Acts 1979; the juvenile court services fund fee through Act No. 93-564, Ala. Acts 1993; and the county treasury fee through Act No. 99-530, Ala. Acts 1999. Therefore, Neal's argument regarding the filing fee is also without merit.
For the foregoing reasons, we reverse the judgment and remand this case to the trial court with instructions that it enter an order vacating Neal's removal from work release. "The Double Jeopardy Clause does not apply to actions that are not `essentially criminal'.... Nor does it apply to disciplinary, parole, probation, or bond revocation hearings, because they are administrative proceedings." Coleman v. State, 642 So.2d 532, 534 (Ala. Crim.App.1994) (quoting Project: Twenty *589 Second Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1991-1992, 81 Geo.L.J. 1029, 1221 (1993)). Therefore, the vacating of the order removing Neal from work release does not prohibit the Department of Corrections from bringing a new proceeding against him to remove him from the work-release program. Any new proceeding should afford Neal the necessary due-process guarantees.
REVERSED AND REMANDED.
McMILLAN, P.J., and SHAW, J., concur; WISE, J., concurs specially, with opinion, which BASCHAB, J., joins.
WISE, Judge (concurring specially).
I reluctantly concur with the main opinion reversing the circuit court's dismissal of Neal's petition for a writ of habeas corpus. That reversal is based on the Alabama Supreme Court's holding in Ex parte Berry, 794 So.2d 307 (Ala.2000).
I recognize that this Court is bound by the decisions of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, and "is without authority to overrule the decisions of that court." Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972). Thus, we have no choice but to reverse the circuit court's dismissal of Neal's habeas corpus petition claiming that the Department of Corrections deprived him of a liberty interest by removing him from work release without first conducting a due-process hearing.
However, I write specially to urge the Supreme Court to revisit its holding in Ex parte Berry. I do not believe that inmates such as Berry and Neal have a protected liberty interest in remaining on work release; thus, removal from work release does not trigger the due-process requirements established in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). I am not alone in this belief. Indeed, Justice Brown and Justice See dissented from the holding in Ex parte Berry based on this same rationale. 794 So.2d at 310-12. Although the majority in Ex parte Berry analyzed the Classifications Manual in light of the decision in Whitehorn v. Harrelson, 758 F.2d 1416 (11th Cir.1985), it failed to consider a subsequent decision by the United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As Justice Brown recognized in her dissent, Sandin makes it clear that state regulations are no longer a consideration in determining whether an inmate must be afforded due process. 794 So.2d at 310-12. I note particularly the following language from Sandin:
"In a series of cases since Hewitt [v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)], the Court has wrestled with the language of intricate, often rather routine prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement.
". . . .
"By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. Courts have, in response, and not altogether illogically, drawn negative inferences from mandatory language in the text of prison regulations. The Court of Appeals' approach in this case is typical: It inferred from the mandatory directive that a finding of guilt `shall' be imposed *590 under certain conditions the conclusion that the absence of such conditions prevents a finding of guilt.
"Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights on inmates, but the result of the negative implication jurisprudence is not to require the prison officials to follow the negative implication drawn from the regulation, but is instead to attach procedural protections that may be of quite a different nature....

"Hewitt has produced at least two undesirable effects. First, it creates disincentives for States to codify prison management procedures in the interest of uniform treatment....
"Second, the Hewitt approach has led to the involvement of ... courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone....
"In light of the above discussion, we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum [v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
515 U.S. at 480-84, 115 S.Ct. 2293 (citations omitted).
As seen above, Sandin makes it clear that when presented with the question whether a prisoner has been deprived of a constitutionally protected liberty interest, the proper focus is not the language of a particular prison rule or regulation, but the nature of the deprivation suffered by the prisoner. It is only when the deprivation amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that due-process protections are triggered. In my opinion, Sandin signals a retreat from a more expansive interpretation of prison rules, regulations, and policies. Even the majority in Ex parte Berry recognizes that there is no affirmative right contained within the Due Process Clause or Alabama statutory law to participate in community-based correctional programs, i.e., "work release." 794 So.2d at 308. However, Ex parte Berry appears to ignore the holding in Sandin and instead opts for an expansive interpretation of Department of Correction ("DOC") rules and regulations, namely, that DOC work-release regulations, as set out in its Classification Manual, created a liberty interest in an inmate's continued participation in work release. 794 So.2d at 308-09.
Admittedly, the DOC rules and regulations hinge removal from work release on the inmate's conduct, willful negligence, or other violation of the work-release guidelines. They emphasize the importance of assisting program participants in remaining on the program unless removal is necessary *591 for the safety of the community.[2] By emphasizing prisoner misconduct as the only basis for removal from the program, DOC's rules and regulations could be interpreted to create a reasonable expectation in inmates that assignment to work release will be permanent, absent certain prohibited conduct.
While such an assumption might be reasonable, this expectation does not signal a state-created liberty interest under Sandin. I do not believe that removal from work release imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293. Nor does DOC's classification of Neal as a "heinous offender," which resulted in his removal from the program and placement in a more secure facility, mark a "dramatic departure from the basic conditions" of Neal's sentence. Rather, confinement in a more secure institution is far more typical of what Nealand every other inmate in the state's correctional systemwould normally expect in serving their sentences. Therefore, Neal's return to the general prison population would not trigger a liberty interest subject to due-process protections.
Although I must concur with the majority's decision in this case, see § 12-3-16, I write to set out my objections to the Supreme Court's decision in Ex parte Berry. Contrary to the holding in Ex parte Berry, I believe that work release is a privilege, not a right. Accordingly, I urge the Supreme Court to abandon its holding in Berry, and return to the well-established principle that inmates of Alabama's prison system do not have a liberty interest with respect to their custody classification, or in remaining on work release. See Handley v. State, 549 So.2d 630, 631 (Ala.Crim.App. 1989) (custody classification); Dukes v. State, 576 So.2d 683, 684 (Ala.Crim.App. 1991) (work release).
BASCHAB, J., concurs.
NOTES
[1] According to Neal, On November 9, 1994, the Department of Corrections' Classification Manual, Chapter 1, Sec. 4 stated: "No due process hearing is required for transfers among institutions other than removal from full work release status including free world employment." (C.R. 19.) The State did not refute Neal's contention.
[2] For example, the change in classification criteria that resulted in Neal's being classified as a "heinous offender" was, no doubt, for community safety reasons.