837 So.2d 319 (2001)
Charles E. CONNERS
v.
STATE of Alabama.
CR-00-1074.
Court of Criminal Appeals of Alabama.
November 30, 2001.
Rehearing Denied January 25, 2002.
*320 Charles E. Conners, pro se.
Andrew W. Redd, general counsel, and William F. Addison, asst. gen. counsel, Department of Corrections, for appellee.
PER CURIAM.
On October 5, 2000, Charles E. Conners filed a petition for a writ of habeas corpus, in which he alleged that he was denied due process when he was removed from work release and reclassified as a "heinous offender" based on a change in the criteria of the Department of Corrections for determining which inmates are eligible for work release. After receiving a response from the State, the circuit court summarily denied Conners's petition on January 2, 2001.

I.
Citing Ex parte Berry, 794 So.2d 307 (Ala.2000), Conners contends that the circuit court erred in summarily denying his habeas corpus petition because, he says, he had a liberty interest in remaining on work release. Specifically, Conners maintains that the work-release contract he signed when he was first placed on work release created a liberty interest in remaining on work release because, he says, the contract contained the following language: "If I am removed from work release, I will receive a due process hearing." (C. Supp. 9.) In addition, although Conners concedes that he was given a reclassification hearing, he argues that the reclassification hearing was held after he had already been removed from work release and, therefore, that the hearing did not satisfy the requirements of due process.
In Ex parte Berry, the Alabama Supreme Court held that the circuit court had erred in summarily denying Berry's petition for a writ of habeas corpus because, it said, Berry's petition had created *321 a genuine issue of material fact as to whether he had a liberty interest in remaining on work release. Specifically, the Court stated:
"Similarly in this present case Berry argues that the procedures set out in the [Department of Corrections'] Classification Manual require a due-process hearing before an inmates participation in the work-release program can be terminated. Berry has provided this Court with the portion of the Department of Corrections' Classification Manual that contains the language stating that `[n]o due process hearing is required for transfers among institutions other than removal from full work release status including free world employment, PDL, or SIR.' Berry also alleges that it has been the practice of the Department of Corrections to remove inmates from the work-release program only after the inmate commits some infraction of an administrative rule or regulation. The language in the Classification Manual prevents the Department of Corrections from arbitrarily removing an inmate from the work-release program, and, by doing so, creates a liberty interest in an inmate's continued participation in the work-release program. Therefore, the circuit court erred in summarily dismissing Berry's petition for the writ of habeas corpus. Berry's petition creates a genuine issue of material fact as to the applicability of the regulation to his work-release status."
794 So.2d at 309.
In this case, Conners maintains that his work-release contract, not the Department of Corrections Classification Manual, created a liberty interest in his remaining on work release. However, unlike the appellant in Ex parte Berry, Conners did not provide this Court with a copy of his work-release contract showing that the contract did, in fact, contain the language he alleged it did. In fact, Conners failed to attach any documentation to his petition to support his claim that he had not been afforded due process before he was removed from work release.
Section 15-21-4, Ala.Code 1975, provides:
"Application for a writ of habeas corpus must be made by petition, signed either by the party himself for whose benefit it is intended or by some other person on his behalf, must be verified by the oath of the applicant to the effect that the statements therein contained are true to the best of his knowledge, information and belief, and must state, in substance, the name of the person on whose behalf the application is made, that he is imprisoned or restrained of his liberty in the county, the place of such imprisonment, if known, the name of the officer or person by whom he is so imprisoned and the cause or pretense of such imprisonment; and, if the imprisonment is by virtue of any warrant, writ or other process, a copy thereof must be annexed to the petition or the petition must allege that a copy thereof has been demanded and refused or must show some sufficient excuse for the failure to demand a copy."

(Emphasis added.) The record reflects that Conners did not attach to his petition any documents supporting his claim that he had a liberty interest in remaining on work release or that he was removed from work release without due process; he did not allege that he had demanded a copy of any such documents and was refused; and he offered no excuse for his failure to comply with § 15-21-4. See, e.g., Young v. State, 712 So.2d 1121 (Ala.Crim.App. 1998); and Williams v. State, 651 So.2d 1153 (Ala.Crim.App.1994). Although Conners filed a motion for discovery of documents *322 some 29 days after the circuit court summarily denied his petition, this belated request for documents was not sufficient to comply with § 15-21-4. In addition, although the Alabama Supreme Court's holding in Ex parte Berry shows that inmates may, in fact, have a liberty interest in remaining on work release, that holding does not relieve inmates of their burden under § 15-21-4 either to attach copies of the records of their removal from work release or to demand those records in a timely fashion.
Moreover, even assuming that Conners's work-release contract created a liberty interest in remaining on work release and notwithstanding Conners's failure to comply with § 15-21-4, Conners's claim that his reclassification hearing was held after he had been removed from work releaseand, therefore, that the hearing did not comport with due processis refuted by the record. The State attached to its motion to dismiss Conners's petition copies of the following three documents: (1) the advance written notice to Conners of the reclassification hearing; (2) a memorandum of the procedure used during the hearing; and (3) the progress-review form indicating the evidence presented at the reclassification hearing and the reasons that Conners had been reclassified as a "heinous offender." Two of these documents refute Conners's claim that he was removed from work release before his reclassification hearing, and the third document is, at best, ambiguous as to the timing of the hearing. Furthermore, these documents reflect that Conners's reclassification hearing complied with the due-process requirements of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Based on the record before us, it appears that Conners received all the due process to which he was entitled.[1]
Because Conners failed to comply with the statutory pleading requirements of § 15-21-4; because, even assuming that Conners had a liberty interest in remaining on work release, the record refutes Conners's claim that his reclassification hearing was held after he had been removed from work release; and because the record reflects that Conners was afforded due process during the reclassification hearing, the circuit court's summary denial of Conners's petition for a writ of habeas corpus was proper, even in light of the Alabama Supreme Court's holding in Ex parte Berry.

II.
Conners contends that the circuit court erred in denying his motion for discovery, filed on January 31, 2001, 29 days after the circuit court had denied his petition. However, the record reflects that, contrary to Conners's contention, the circuit court never ruled on Conners's discovery motion. In addition, Conners never objected to the circuit court's failure to rule on the motion. Because Conners suffered no adverse ruling from the circuit court, this issue is not properly before this Court for review. See, e.g., Allen v. State, 825 So.2d 264 (Ala.Crim.App.2001); and Woods v. State, 790 So.2d 1014 (Ala.Crim. App.2000).

III.
Finally, Conners contends that the circuit court erred in ordering the Department of Corrections to withhold 25% of the *323 deposits to his prison account until the court costs for filing his habeas corpus petition were paid because, he says, he was granted indigency status and an indigent defendant is not required to pay filing fees. In addition, Conners contends that the circuit court erred in ordering him to pay $187 in court costs when, he says, the statutory maximum filing fee is $140.[2] Conners presented both of these claims in his motion to vacate the circuit court's order denying his habeas corpus petition; therefore, they are properly before this Court for review.
Section 12-19-70(b), Ala.Code 1975, provides, in pertinent part, that "[t]he docket fee may be waived initially and taxed as costs at the conclusion of the case if the court finds that payment of the fee will constitute a substantial hardship." See also Fincher v. State, 724 So.2d 87, 90 (Ala.Crim.App.1998) ("Section 12-19-70(b), Ala.Code 1975, provides that, as was done in the present case, the docket fee of an indigent petitioner may be waived initially and then taxed as costs at the conclusion of the case."); and Cofield v. State, 682 So.2d 493, 494 (Ala.Crim.App.1996) ("[T]he docket fee of an indigent petitioner may be waived initially and then may be taxed as costs at the conclusion of the case."). The circuit court properly ordered Conners to pay the court costs of his habeas corpus petition.
In addition, we find no error in the circuit court's imposition of $187 in court costs. Although § 12-19-71, Ala.Code 1975, provides a filing fee in civil cases of $145 for all cases filed after October 1, 2000, this Court has recognized that there are separate county costs that may increase that filing fee beyond the statutory maximum of $145. See, e.g., Neal v. State, 803 So.2d 586 (Ala.Crim.App.2001), citing Act No. 79-751, Ala. Acts 1979 (providing for an additional law library fund fee of $2.00 in all cases in circuit and district courts in counties that have established law libraries under the act), Act No. 93-564, Ala. Acts 1993 (providing for an additional juvenile court-services fund fee of $3.00 in all cases, except small claims, in circuit and district courts in Elmore County), and Act No. 99-530, Ala. Acts 1999 (providing for an additional county treasury fee of $5.00 in all cases, except small claims, in circuit and district courts in Elmore County), as examples of such county costs. The record in this case does not show that the $42 discrepancy between the $145 statutory filing fee and the $187 filing fee assessed against Conners was the result of separate county costs, nor does it show that the discrepancy was not the result of such separate costs.
"`This court cannot predicate error on matters not shown by the record, nor can we presume error from a silent record. Smelcher v. State, 520 So.2d 229 (Ala.Crim.App.1987); Abbott v. State, 494 So.2d 789 (Ala.Crim.App.1986). "Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done." Jolly v. State, 405 So.2d 76 (Ala.Crim.App.1981); Watson v. State, 398 So.2d 320 (Ala.Crim.App. 1980), writ denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).'"
Stegall v. State, 628 So.2d 1006, 1009 (Ala. Crim.App.1993), quoting Owens v. State, 597 So.2d 734, 736 (Ala.Crim.App.1992). We will not presume that a circuit court's imposition of court costs is error based on *324 a silent record. Rather, we believe that the burden is on the petitioner to show that any discrepancy between the statutory filing fee of $145 and the filing fee imposed in his or her case is not the result of separate county costs. Conners has failed to meet that burden. Therefore, we find no error in the circuit court's imposition of $187 in court costs.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
COBB, J., dissents, with opinion.
COBB, Judge (dissenting).
I respectfully dissent from the majority's decision to affirm the judgment in this cause. First, I disagree with the majority's attempt in Part I of its opinion to differentiate Conners's circumstances from the facts in Ex parte Berry, 794 So.2d 307 (Ala.2000). Second, I do not agree with Part III, because I do not believe that the record is silent as to any error with regard to the imposition of the filing fee.

I.

A. Conners's Proof
The majority concludes that the circuit court's summary denial of Conners's petition was correct, in part because Conners violated § 15-21-4, Ala.Code 1975, in that he did not "attach to his petition any documents supporting his claim that he had a liberty interest in remaining on work release or that he was removed from work release without due process; he did not allege that he had demanded a copy of any such documents and was refused; and he offered no excuse for the failure to comply with § 15-21-4." 837 So.2d 321. However, on January 31, 2001, Conners filed both a motion for discovery of documents, in which he requested a copy of his "Inmate Work Release Agreement," and a motion to vacate, in which he alleged that his Work Release Agreement contained the following language: "If I am removed from work release, I will receive a due process hearing." (C.R. 32 and S.R. 9.) As the majority points out, these two motions were filed 29 days after the circuit court had summarily denied Conners's petition. Nonetheless, the requisite language was used by Conners and unrefuted by the State. The majority states that, "although the Alabama Supreme Court's holding in Ex parte Berry shows that inmates may, in fact, have a liberty interest in remaining on work release, that holding does not relieve inmates of their burden under § 15-21-4 either to attach copies of the records of their removal from work release or to demand those records in a timely fashion." 837 So.2d 322. However, Justice Brown noted in her dissent in Berry that the excerpt from the Classification Manual the majority relied on to find that Berry had a liberty interest in remaining on work release was not contained in the record on appeal; the excerpt was contained only in an appendix to the appellant's brief on appeal. If the petitioner in Berry could present his evidence for the first time on appeal, then certainly Conners could present his evidence for the first time to the circuit court in a motion to vacate. Therefore, I believe that the summary disposition of Conners's petition was not appropriate.

B. The Sufficiency of the Hearing
The majority states that, although Conners alleges that his hearing occurred after he had already been removed from work release, the exhibits attached to the State's motion to dismiss Conners's petition indicate otherwise. I disagree. The *325 administrative changes regarding "heinous offenders" apparently involve three stages: first, the prisoner is reclassified as a "heinous offender," based on the facts underlying his conviction; second, the "heinous offender" is removed from work release; and, finally, the custody status of the "heinous offender" is reviewed. The exhibits attached to the State's motion to dismiss indicate that the hearing Conners received did not concern his removal from work-release status; rather, the hearing concerned Conners's custody reclassification.
Exhibit 2, entitled "Department of CorrectionsProgress Review Form," and dated June 18, 1996, concerned the proposed custody transfer of Conners. The form states, "Reclass[ification] hearing due to Commissioner's order to remove Conners from work release due to the details of the murders he committed." This sentence indicates that the hearing concerned a proposed custody change, that Conners had already been reclassified as a "heinous offender," and that Conners had already been removed from work release by virtue of the Commissioner's order.
Exhibit 3, entitled "24 Hour Advance Notification of Pending Reclassification," and dated June 18, 1996, states, "This is not a disciplinary hearing. A reclassification team will review this matter and recommend changes, if needed, in your current placement and/or custody." The reason stated for the reclassification hearing was that, "[b]ased upon a re-evaluation of the criteria for work release, it has been determined by the Commissioner that certain inmates whose crimes are heinous should neither be placed nor otherwise remain in work release or assigned to a community based facility." This sentence, although ambiguous, also indicates that the hearing would address either Conners's work-release status or, more likely, his placement in a particular facility.
Finally, and most telling, Exhibit 4, entitled "Reclassification Hearing on Conners, Charles B/M 106122," which is undated, states:
"On Wednesday, June 19, 1996, at approximately 5:14 p.m., a reclassification board convened to consider an upgrade in custody and change in institutional placement for CONNERS, CHARLES B/M 106122....
"....
"The board came to the following decision after reviewing all testimony. [The Chairperson's] recommendation is return to Level IV institution as stipulated in [the Commissioner's] criteria. Recommend Elmore-Min. unless CRB stipulates inmate must be housed at a Level IV facility."
(R. 17) (emphasis added). Again, this exhibit indicates that the hearing, and the reclassification board's ultimate decision, concerned Conners's housing, not his participation in the work-release program. As was the case in Berry, the hearing before the reclassification board was to determine if a change in classification criteria necessitated a change in his placement or custody. The hearing was not conducted to determine whether Conners should be removed from the work-release program.
Therefore, I cannot agree with the majority's assertion that "Conners's claim that his reclassification hearing was held after he had been removed from work releaseand, therefore, that the hearing did not comport with due processis refuted by the record."

II.
Based on the premise that this Court will not predicate error on a silent record, *326 the majority finds no error in the circuit court's imposition of a $187 filing fee when § 12-19-71 provides for a filing fee of $145. I disagree with the application of that otherwise correct proposition of law in this case. The record is not silent. Conners alleged, and the record indicates, that the filing fee assessed against Conners exceeded the statutorily allowed fee by $42.00, without explanation. Conners has proved his claim. The $42 discrepancy might be due to the imposition of separate county costs, see, e.g., Neal v. State, 803 So.2d 586 (Ala.Crim.App.2001) ("Various costs for the county law library, the county treasury, and the juvenile court services board were assessed as costs in this case."). However, the record here does not indicate the reason for the increase in the statutorily provided filing fee.
For the reasons stated above, I believe this cause should be remanded for further proceedings to explore the merits of Conners's petition, consistent with Ex parte Berry, and for explanation of the filing fees.
NOTES
[1] Because the record shows that Conners was afforded due process before he was removed from work release, we need not address whether a reclassification hearing in full compliance with Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held after removal from work release, would satisfy due process.
[2] We note that the statutory maximum filing fee is actually $145. See § 12-19-71, Ala. Code 1975.