SHAW, Judge.
Reginald Byers appeals the circuit court’s summary denial of his petition for a writ of habeas corpus, wherein he alleged that he was denied due process in a prison disciplinary proceeding. He was found guilty in the disciplinary proceeding of violating Rule No. 41 in Annex A to the Alabama Department of Corrections, Administrative Regulation No. 403 (making false statements or charges), and Rule No. 91 in Annex A to the Alabama Department of Corrections, Administrative Regulation No. 403 (conspiracy to commit a violation of departmental or institutional rules). Byers was sanctioned with removal from work release, 30 days’ extra duty, and 45 days’ loss of all privileges. Byers did not lose any good time.
In his petition, Byers contended that he was denied due process in the prison disciplinary proceeding because, according to him, the hearing officer’s decision was based solely on hearsay, none of the witnesses to the incident testified, and the hearing officer did not make an inquiry into the reliability of the informant who provided the information used to find him guilty of the violations. Thus, he claimed, the evidence against him failed to meet the “some-evidence” standard and the hearing officer’s finding was arbitrary and capricious. Byers attached to his petition copies of the disciplinary reports. The Department of Corrections (“DOC”) filed a motion to dismiss, arguing (1) that the petition failed to state a claim upon which relief could be granted; (2) that Byers’s punishment did not involve the loss of a liberty interest; and (3) that, notwithstanding its position that Byers’s punishment did not involve the loss of a liberty *956 interest, Byers had, in fact, been afforded due process. The DOC attached to its motion to dismiss partial copies[1] of the disciplinary reports from Byers’s disciplinary hearings and a copy of the institutional incident report completed by the arresting officer, on which the hearing officer relied. Byers filed a response to the DOC’s motion to dismiss. The circuit court granted the State’s motion to dismiss the petition, stating, “The above-styled Petition For Writ of Habeas Corpus having been considered by the Court along with the Respondent’s Motion to Dismiss, the Court is of the opinion that the Motion is well taken and the above-styled Petition is due to be dismissed and denied.” (C. 30.)
The DOC, in its brief on appeal, cites established caselaw holding that confinement in segregation for disciplinary reasons, security or custody classifications, or the loss of privileges does not create a liberty interest or trigger the due-process protections under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, the DOC acknowledges that Byers’s removal from work release did involve a liberty interest, see Ex parte Berry, 794 So.2d 307 (Ala.2000), but it maintains that Byers was afforded due process in compliance with Wolff.
In Wolff, 418 U.S. at 541-42, 94 S.Ct. 2963, the United States Supreme Court held that due process requires that a prisoner in a disciplinary proceeding where a liberty interest is implicated must be afforded advance (no less than 24 hours) notice of the charge against him; the right to be present at the disciplinary hearing; the right to present documentary evidence on his behalf; a qualified right to have a representative present on his behalf; a qualified right to call witnesses; and a written statement of the evidence relied on and the reasons for the decision of the disciplinary body. See Brown v. State, 592 So.2d 621, 623 (Ala.1991); and Zamudio v. State, 615 So.2d 156, 157 (Ala.Crim.App.1993). In Thompson v. State, 504 So.2d 747, 748 (Ala.Crim.App.1987), this Court, relying on Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), stated that in order to satisfy due process, there must be “some evidence” to support the decision by the prison disciplinary board that the inmate is guilty of the alleged violation. The relevant question is then whether there is some evidence in the record that could support the conclusions reached by the hearing officer. See Thompson, 504 So.2d at 748; see also Heidelburg v. State, 522 So.2d 337, 339 (Ala.Crim.App.1988).
“Due process requires that the decision of a state disciplinary board or a hearing officer not be made arbitrarily or capriciously, but be based upon some evidence. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Heidelburg v. State [, 522 So.2d 337 (Ala.Crim.App.1988)]. Hearsay testimony may be admissible in prison disciplinary hearings; however, it may not alone be sufficient to support a finding of guilt. Pearsall v. State, 564 So.2d 1014 (Ala.Cr.App.1989), rev’d in part on other grounds, 564 So.2d 1017 (Ala.1990). See also Ex parte Floyd, 457 So.2d 961 (Ala.1984). Situations arise where findings of guilt based entirely on hearsay are proper and necessary; however, in those cases certain measures must be taken to ensure minimum due process. Pearsall v. State.”
*957 Bridges v. State, 636 So.2d 696, 697 (Ala.Crim.App.1993). See also Oliver v. State, 770 So.2d 1116, 1117-18 (Ala.Crim.App.2000); and Gowers v. State, 766 So.2d 986 (Ala.Crim.App.2000).
The disciplinary reports in the record indicate that the hearing officer’s finding of guilt was based on “the arresting officer’s incident report, the statements given by Ms. Pruitt, and other statements [given by individuals] who wished not to be named.” (C. 7, 10.) Each of the disciplinary reports contains the following findings of fact by the hearing officer:
“On May 20, 2002, Inmate Byers did conspire to commit violations of departmental or institutional rules by trying to get Lisa Pruitt to exchange some $1.00 bills for $50.00 or $100’s and did state to Ms. Pruitt that O.E. (Lawrence Buford) had [stolen money from] the vending man and he was trying to help him get rid of it so he wouldn’t get in trouble, making him an accessory. Inmate Byers stated he knew nothing when questioned.”
(C. 7, 10.) The record reflects that the arresting officer testified during the hearing as follows:
“On May 20, 2002, at approximately 12:24 a.m., Supervisor George Hughes from Gold Kist phoned Officer Thomas Black at Hamilton Work Release and informed [him] that approximately $600.00 in cash had been stolen from the vending man, Jamie Poston. Officer Black departed Hamilton Work Release to Gold Kist in Russellville, Alabama. Officer Black arrived and was told by Plant Supervisor that at approximately 9:30 p.m. on May 10, 2002, $600.00 in cash ($500.00 in ones and $100.00 in fives) had been stolen. Officer Black questioned the vending man. Mr. Po-ston stated that [Inmate] Rufus Baskin had approached him wanting change. Baskin was told to wait until Poston got to the vending area. During the investigation it was revealed [that] Inmate Baskin distracted the vending man while [Inmate] Lawrence Buford stole the money. It was also revealed that Reginald Byers had approached Lisa Pruitt to get the one’s exchanged for $50.00 or $100.00 bills. When I questioned Inmate Byers, he stated [that] he knew nothing about any money.”
(C. 6, 8; 9,11; 20-21; 22-23.) There is no indication in the disciplinary reports that any other witnesses testified at the disciplinary hearing. In addition, in his incident report, the arresting officer stated:
“At approximately 12:24 a.m., on May 20, 2002, Officer Thomas Black received a phone call from George Hughes at Gold Kist stating that $600.00 had been stolen from the vending man, Jamie Po-ston. At approximately 12:27 a.m., Officer Black notified Sgt. Gary Willingham of the situation. At approximately 12:53 a.m., Officer Black departed Hamilton Work Release Center to Gold Kist in Russellville, Alabama. Upon arriving at Gold Kist, Officer Black spoke with supervisor Hughes about the incident. Supervisor Hughes stated that ... the vending man said he had $600.00 stolen from him. Officer Black then questioned the vending man about the incident. The vending man stated that $500.00 in ones and $100.00 in fives was stolen. The vending man stated that Inmate Rufus Baskin, BM, AIS # 155555 approached him and asked for change. The vending man told Inmate Baskin to let him get into the breakroom first, and then he would make change. The vending man entered the break-room and turned to get his money bag from the cart, but the money bag was gone. The vending man told Officer Black that he thought Inmate Baskin *958 asking for change was a distraction. Supervisor Hughes stated to Officer Black that a confidential informant had come to him explaining that he knew who took the money. The informant told Officer [Black] that he saw Inmate Buford, BM, AIS # 213486 and Inmate Reginald Byers, BM, AIS # 166951 with the money. Also, Lisa Pruitt told Officer Black that Inmate Buford had come to her trying to exchange the money for larger bills. Officer Black then proceeded to question and search Inmates Buford, Byers, and Baskin, and the confidential informant. Inmates Buford and Byers told Officer Black that they did not know anything about any money being stole[n]. Inmate Baskin told Officer Black that he thought a free-world male and female had stolen the money. Officer Black then found a $20.00 bill on Inmate Baskin. Officer Black phoned Sgt. Willingham and informed him about the $20.00. Sgt. Willingham informed Officer Black that Inmate Baskin had only drawn $2.00 from his account the past week. Sgt. Willingham then told Officer Black to bring Inmate Baskin back to the camp. Inmates Baskin, Byers, and Buford are being housed in the Marion County Jail pending further investigation and possible disciplinary action.”
(C. 24-25.)
Here, the sole evidence upon which the hearing officer’s finding of guilt was based was the hearsay testimony of the arresting officer regarding what he had been “told” by various people during his investigation. Taking into consideration all of the evidence in the record, we cannot say that the hearsay testimony of the arresting officer fulfills the “some evidence” requirement of due process. There is no evidence in the record as to why Ms. Pruitt or any of the other persons who apparently gave statements [2] did not testify, and nothing in the record tends to lend any particular reliability to the hearsay testimony.
Based on the foregoing, we hold that the hearing officer’s finding of guilt was not supported by some evidence and, therefore, that the hearing officer’s finding was arbitrary and capricious. See, e.g., McFadden v. State, 854 So.2d 160 (Ala.Crim.App.2002); Oliver v. State, 770 So.2d 1116, 1118 (Ala.Crim.App.2000); and Bridges v. State, 636 So.2d 696, 697 (Ala.Crim.App.1993). The judgment of the circuit court dismissing the petition for writ of habeas corpus is reversed, and this cause is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. The reports were each three pages in length. The DOC’s exhibits did not contain page two of either report. However, the copies of the reports Byers attached to his petition did contain page two.

. It appears from the incident report that the confidential informant was an inmate, as evidenced by the officer's statement that he questioned and searched Inmates Buford, Byers, and Baskin, and the confidential informant. We are not oblivious to the fact that an inmate would likely desire to remain unnamed, for fear that he would be somehow retaliated against for cooperating with authorities in an investigation.