SHAW, Judge.
Willie J. Thomas appeals the circuit court’s summary denial of his petition for a writ of habeas corpus, wherein he alleged that he was denied due process when he was reclassified as a “heinous offender” and removed from work release based on a change in the criteria of the Department of Corrections (“DOC”) for determining which crimes are “heinous.” After receiving a response from the State, the circuit court summarily denied the petition on April 24, 2002.
I.
Citing Ex parte Berry, 794 So.2d 307 (Ala.2000), Thomas contends that the circuit court erred in summarily denying his petition for a writ of habeas corpus because, he says, he had a liberty interest in remaining on work release and because, he says, he was not afforded a due-process hearing before being removed from work release based on his reclassification as a “heinous offender.”[1]
The State attached to its motion to dismiss Thomas’s petition copies of the following four documents: (1) an affidavit from Paul Whaley II, DOC’s director of. classification; (2) an advance written notice to Thomas of the reclassification hearing; (3) a progress-review form indicating that a reclassification hearing was held and the reasons for reclassifying Thomas as a “heinous offender”; and (4) an inmate summary sheet. These documents reflect that the reclassification hearing complied with the due-process requirements of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. *369 2963, 41 L.Ed.2d 935 (1974).[2]
However, the record suggests, and, more importantly, the circuit court found, that Thomas was removed from work release before the reclassification hearing was held. As best we can discern from the record, it appears that DOC changed its criteria for determining which crimes were considered “heinous”; that, based on that change, Thomas was reclassified as a “heinous offender” and, as a result of the reclassification, was removed from work release on February 12, 1999; that he was notified on March 2, 1999, of a pending reclassification hearing due to his reclassification as a “heinous offender”; and that on either March 3 or March 4, 1999, a reclassification hearing was held, which, as noted above, fully complied with due process, and after which Thomas was permanently removed from work-release status.
In its order summarily denying Thomas’s petition, the circuit court stated, in pertinent part:
“The petitioner was removed from work release after new eligibility guidelines were enacted by the Department of Corrections. On January 29, 2002, this Court entered an order finding that based upon Ex parte Berry, 794 So.2d 307 (Ala.2000), an inmate has a protected liberty interest in work release status once that status has been granted and is, therefore, entitled to due process regarding his removal from a work release program. Further, in that order, the court designated that the pivotal question remained whether a due process hearing must be held before an inmate may be removed from work release or whether a due process hearing held after removal was sufficient.
“Both the petitioner and respondent have filed responses per this court’s January 29, 2002, order.
“Based upon those responses and the documentation supplied with the amendment filed by respondents, the court finds that a hearing held within a brief period of time after removal meets the requirements of due process. The court further finds that the petitioner received the due process to which he is entitled and that his rights were not violated in this case.”
(C. 40 — 41.) We agree with the circuit court that Thomas was afforded all the process he was due with respect to his removal from work release.
The Alabama Supreme Court’s opinion in Ex parte Berry dealt with the permanent removal from work-release status, not the temporary restraint from participation in the work-release program. The Supreme Court specifically stated in its opinion that Berry’s “work-release status was revoked” on February 12, 1999, before his reclassification hearing on March 18, 1999. 794 So.2d at 308. In this case, unlike in Ex parte Berry, the record suggests that, although Thomas, was temporarily restrained from participating in the work-release program before the reclassification hearing, his work-release status was permanently revoked only after the hearing. In his affidavit, Whaley states the reason for this procedure as follows:
“Inmates being considered for removal from a community-based facility are considered to be above average security risks. Work release centers do not have a classification function nor are they equipped with secure holding facilities *370 for inmates who pose security risks. For that reason, offenders such as Thomas are moved, immediately to a more secure placement to insure the protection of the public and the orderly operation of the facility from which they are being removed.”
(Emphasis added.)
Thus, the dispositive issue in this case is whether due process is violated when DOC temporarily restrains an inmate from participating in the work-release program pending a reclassification hearing — at which the inmate is afforded full due process and after which the inmate is permanently removed from work-release status. This issue was expressly left open in this Court’s opinion in Conners v. State, 837 So.2d 319 (Ala.Crim.App.2001), cert. denied, 837 So .2d 326 (Ala.2002), overruled, Ex parte Deramus, [Ms. 1012372, March 21, 2003] - So.2d - (Ala.2003), and it is an issue of first impression in this state. We hold that there is no violation of due process in temporarily removing an inmate from participation in the work-release program pending a due-process hearing.
“The touchstone of due process is protection of the individual against arbitrary action of government.” Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). “ ‘Once it is determined that due process applies, the question remains what process is due.’ ” Brock v. Roadway Express, Inc., 481 U.S. 252, 261, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987), quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). That inquiry “must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.” Cafeteria & Restaurant Workers Union, Local 173, AFL-CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The procedures required for due process vary depending on the circumstances; however, “[t]he fundamental requirement of due process is the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’ ” Mathews v. Eldñdge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).
Thomas had the opportunity to be heard at the reclassification hearing and that hearing was held within a reasonable time after his temporary removal from the work-release program. It would be unreasonable to require DOC to continue to allow inmates whose crimes have been determined to be “heinous” to participate in the work-release program pending a formal reclassification hearing. The State has a legitimate interest in protecting the public from heinous offenders, an interest DOC’s procedure is clearly designed to protect, and that interest greatly outweighs an inmate’s interest in not being temporarily restrained from participating in the work-release program pending a formal hearing. The temporary deprivation suffered by Thomas in this case — and suffered by many inmates as a result of changes in administrative criteria — does not rise to the level of a constitutional deprivation. See generally Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See also Kim v. Hurston, 182 F.3d 113 (2d Cir.1999)(holding that although an inmate had a right to due process before she was formally and permanently removed from the work-release program, she had no right to due process when she was initially physically removed from the program pending the formal hearing); and Greaves v. New York, 958 *371 F.Supp. 142 (S.D.N.Y.1997)(noting that an inmate’s removal from workrelease two days before the disciplinary hearing was not a violation of due process). See also Adams v. Kincheloe, 743 F.Supp. 1393 (E.D.Wash.1990)(assuming that an inmate had a liberty interest in not being placed on a restricted diet, his placement on the restricted diet before his disciplinary hearing was not a violation of due process); and Vigliotto v. Terry, 873 F.2d 1201, 1202-03 (9th Cir.1989)(noting that “[t]he temporary deprivation of an inmate’s legal materials does not, in all cases, rise to a constitutional deprivation”).
DOC’s procedure — temporarily restraining inmates from participating in the work-release program pending a formal hearing after which the inmates are permanently removed from work-release status — does not violate due process.
Because the record reflects that Thomas was afforded due process in a meaningful time and in a meaningful manner with respect to his permanent removal from work-release status, the circuit court properly denied his habeas corpus petition.
II.
Thomas also contends that the circuit court erred in summarily denying his petition for a writ of habeas corpus because, he says, he should not have been classified as a “heinous offender.” Specifically, Thomas argues that his crime was not conscienceless, pitiless, and unnecessarily torturous to the victim and, therefore, should not be considered heinous.
Thomas’s argument is based on the assumption that the term “heinous” as used by the DOC in classifying inmates is the equivalent of the heinous, atrocious, or cruel aggravating circumstance found to exist in certain death-penalty cases. See, e.g., Ex parte Clark, 728 So.2d 1126, 1138 (Ala.1998)(noting that the especially heinous, atrocious, or cruel aggravating circumstance has consistently been defined to include only “ ‘those conscienceless or pitiless homicides which are unnecessarily torturous to the victim’ ”), quoting Lindsey v. Thigpen, 875 F.2d 1509, 1514 (11th Cir.1989). However, this assumption is incorrect and refuted by Whaley’s affidavit, which states, in pertinent part:
“The term ‘heinous’ as used by the Department of Corrections is not the same as that utilized by the Code of Alabama and was not intended to be. ‘Heinous’ as used in making determinations of internal classification refers to offenses wherein the details are considered to be particularly aggravated. Inmate Thomas is serving time for murder wherein the victim was shot at close range with a shotgun in his own home after having been beaten and choked. Such an offense is considered heinous for purposes of classification.”
(C. 17.) Thomas’s argument that he should not have been classified as a “heinous offender” is clearly meritless.
Based on the foregoing, the judgment of the circuit court summarily denying Thomas’s habeas corpus petition is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, J., concur.
WISE, J., dissents with opinion, which BASCHAB, J., joins.

. Although Thomas attached no documentation to his petition to support his claims, see § 15-21-4, Ala.Code 1975, the Alabama Supreme Court recently held that documentation is not required in cases involving removal from work release. See Ex parte Deramus, [Ms. 1012372, March 21, 2003] - So.2d -(Ala.2003).

. Thomas was given advance written notice of the hearing; he was afforded “an opportunity to be heard, to present witnesses, and to present documentary evidence” (C. 19); he was provided with a statement of the evidence relied on; and there was some evidence to support the reclassification.